John J. England, Jr., Executor of Ursula Wil-
coxen *vs.* The Vestry of Prince George's
Parish, in Montgomery County, and Margaret
A. Beall.

*Construction of a Will—General Legacy.*

By W's will admitted to probate the 19th September, 1876, $500
were bequeathed to the V. of P. G's P., to be invested, and the
interest devoted to a specified object, and $200 were bequeathed to
M. A. B.   After other pecuniary legacies and devises of real estate,
there is the following item : I give, devise and bequeath to A., wife
of J. G. E., the residue of said unimproved lot, my property on W.
street in said town of R, improved by the brick dwelling house in
which I now reside, and the brick building in which C. has his
saddler's shop, all my household and kitchen furniture, stocks,
bonds, notes and other evidences of debt, and all the rest and resi-
due of my estate, real, personal and mixed, to her, her heirs and
assigns forever, in fee simple.   The appellant was appointed execu-
tor, and took out letters in 1876.   By his final account, passed
within six months thereafter, he claimed an over-payment of
$322.93.   He had delivered to his wife, A., all the personal prop-
erty and certain U. S. bonds, claiming, that said chattels and bonds
were specifically bequeathed to her.   The V. of P. G's P. had made
formal demand of the executor for payment of the legacy before
the passing of the final account, and at the Legislature of 1878,
(which was the first Legislature convened after the testatrix's
death,) it applied for an Act granting assent to the bequest, which
Act was passed.   On a bill filed by the appellees against the
appellant, to enforce payment of their several legacies, it was
Held:

1st.  That the bequest to A. was a general legacy ; and that she took,
subject to the payment of the testatrix's debts, the property
bequeathed, after the payment of the pecuniary legacies to the
appellees and others ; the collateral tax due upon them being first
deducted therefrom.

2nd. That no *laches* could be attributed to the V. of P. G's P., under Art. 38 of the Bill of Rights; and that the Act granting assent to the bequest was in time to impose on the appellant the obligation of paying it.

APPEAL from the Court of Montgomery County, in Equity.

The case is stated in the opinion of the Court.

*George Peter* and *William H. Tuck,* for the appellant.

*Thomas Anderson* and *Joseph H. Bradley,* for the appellees.

GRASON, J., delivered the opinion of the Court.

The question presented in this case arises upon the construction of the last will of Ursula Wilcoxen, which was executed on the nineteenth day of August, 1876, and was admitted to probate on the nineteenth day of September of the same year. By the first item of the will five hundred dollars are bequeathed to the Vestry of Prince George's Parish, Montgomery County, to be invested by said Vestry in some valuable security, and the annual interest thereon to be devoted to the support of the rector or minister, for the time being, in charge of Christ Church at Rockville in said Parish. By the second clause of the will two hundred dollars are bequeathed to Margaret A. Beall, one of the appellees, and by the third and fourth clauses pecuniary legacies, amounting to three hundred dollars are bequeathed to other parties. The fifth and sixth clauses contain devises of real estate, about which there is no question raised in this case; the seventh contains a devise of one-half of an unimproved lot in the town of Rockville; and the eighth is in the following words: "Item. I give, devise and bequeath to Annie L. England, wife of John

G. England, Jr., the residue of said unimproved lot, my property on Washington street in said town of Rockville, improved by the brick dwelling house in which I now reside, and the brick building in which Curtis has his saddler's shop, all my household and kitchen furniture, stocks, bonds, notes and other evidences of debt, and all the rest and residue of my estate, real, personal and mixed, to her, her heirs and assigns forever, in fee simple." John G. England, Jr. took out letters testamentary and within twelve months thereafter presented his final account, showing the personal assets to be $2406.75, and claiming an over-payment by him of the sum of $322.93. This result was reached by his having delivered to his wife, Annie L. England, the devisee and legatee under the eighth clause, all the personal property and three five-twenty United States Bonds, one for one thousand dollars and each of the others for five hundred dollars, claiming that, by the true construction of said eighth clause of the will, said chattels and bonds were *specifically* bequeathed to her, and that said bequest must be gratified to the exclusion of the pecuniary legatees; and this view was strongly urged upon this Court by the appellant's counsel. It is admitted that the devise of the real estate is specific, and the authorities are clear as to this point. But it is contended that, as the household and kitchen furniture and bonds are named in the will and included in the bequest, they are specific bequests. In determining this question the intention of the testatrix, as gathered from the whole will, must govern, if not inconsistent with some principle of law, and such construction must be given as will gratify every part of the will, if it can be done consistently with the general intent. *Bowly's Lessee vs. Lammot*, 3 *H. & J.*, 4. "A specific legacy is the bequest of a particular thing, or money, specified and distinguished from all others of the same kind, as of a horse, a piece of plate, money in a purse, stock in the public funds, a

security for money, which would immediately vest with the assent of the executor." 1 *Roper on Legacies*, 190; *Chase vs. Lockeman*, 11 *G. & J.*, 209. It differs from a general or pecuniary legacy in this respect, that, if there be a deficiency of assets, the specific legacy will not be liable to abate with general legacies; nor, if such specific legacy fail by reason of the failure of the specific fund, will the legatee be entitled to any recompense or satisfaction out of the personal estate of the testator. 1 *Roper,* 190.

We think it clear from the whole will that the testatrix intended that the pecuniary legacies to the appellees, and the other legatees named in the will should be paid. She must be presumed to have known that they could be paid only from her personal estate, inasmuch as the whole of her real estate was specifically devised by her will. It is not to be supposed that she would make these gifts of money by the first clauses of her will, and then destroy them by making specific devises of her real estate by the subsequent clauses, and by a specific bequest of all her personal property and effects to Mrs. England by the eighth clause. She is presumed to have known the amount and character of her property, and the objects of her bounty, and to have made her will accordingly; and it would be a violent presumption to suppose that by the eighth clause of her will she intended to destroy and annul the gifts she had made by its preceding clauses. But if the bequest to Annie L. England be construed to be a general legacy, the intention of the testatrix will be gratified, and each of the objects of her bounty will be benefited. The language of the eighth clause after enumerating certain real estate and certain articles of personal property, then includes all the rest and residue of her estate, real, personal and mixed, and we think very clearly indicates the bequest thereby made, to be a general residuary legacy.

The fact that realty and personalty are devised and bequeathed in the same clause of a will, does not for that

reason make the whole specific. *Howe vs. Earl of Dartmouth,* 7 *Ves.*, 137. But it was contended that inasmuch as the bequest to Mrs. England was of " *my* household and kitchen furniture, stocks, bonds," &c., that the word " *my* " being prefixed to the articles so devised and bequeathed designated the particular stocks and bonds which were the subject of the bequest, and that it was therefore *specific* and not general. We have examined the authorities referred to, and found that in nearly all of them in addition to the use of the word " *my,*" some description of the particular bonds, stocks or funds was given, so as to designate with some degree of certainty *what* stocks, bonds or funds were meant. In the case of *Dryden, Executor vs. Owings,* 49 *Md.*, 356, this Court said, "according to well settled rules of construction, in order to constitute a specific legacy, it is necessary for the testator to distinguish or identify the stock or thing given by some other equivalent expression, marking the *corpus* of the stock bequeathed, and showing that the testator meant the identical stock, and no other should pass to the legatee." In that case the bequest was of $8000 in State of Missouri bonds, and it appeared in proof that, at the time of making his will as well as at the time of his death, the testator had in his possession a large amount of stocks and bonds, and among them eight State of Missouri bonds of the value of $8000. It was claimed that this was a specific bequest of these eight bonds, but this Court held that the bequest was not specific.

In the case of *Robinson vs. Addison,* 2 *Beaven,* 520, a testator bequeathed five and a half shares of Leeds and Liverpool Canal stock to one legatee, five shares to another and five shares to a third, and it appeared that he held fifteen and a half of said shares both at the time of making his will and at the time of his death, and yet Lord LANGDALE, Master of the Rolls, held these to be *general* and not *specific* legacies, saying that "there is no descrip-

tion or reference to show that he meant to give the particular shares which he had at the date of his will, nor any trust from which it can, as it appears to me, be concluded, that he must have meant only such shares as he had at the respective times of making his will and of his death." In the case before us there is no proof to show that the testatrix had the bonds in question at the time she made her will, nor does it appear any where in the will what particular bonds were meant. She may not have had the bonds at the time of the making of the will, but may have acquired them afterwards, for not only "*bonds*," but "stocks, *notes and other evidences of debt*" were also bequeathed in the same sentence, while it appears from the inventory returned by the executor that she had none of the latter at the time of her death. The terms used in the eighth clause are very general, and would have covered any description of stocks, bonds, or notes, which the testatrix might have held at the time of her death.

Nor does the enumeration of some particular articles in a residuary clause of a will, constitute the articles so enumerated specific legacies. In support of this proposition we need refer only to the cases of *Fielding vs. Preston*, 1 *De Gex & Jones*, 438; *Pickup vs. Atkins*, 4 *Hare*, 624; *Taylor vs. Taylor*, 6 *Simons*, 246, and *Mills vs. Mills*, 7 *Simons*, 501.

Annie L. England being then entitled to the personal estate, bequeathed by the eighth clause of the will, only as residuary legatee, she takes it subject to the payment of all the debts of the testatrix, and after the payment of the pecuniary legacies bequeathed by the will.

But it was contended that the bequest to the Vestry of Prince George's Parish, was in violation of the 38th Article of the Bill of Rights, unless sanctioned by an Act of the Legislature, and that, as the final account of the executor had been passed, by which the settlement of the estate was closed before that sanction had been obtained,

the Vestry are not now entitled to recover the legacy of
five hundred dollars bequeathed to them. The final ac-
count was passed in twelve months after letters testa-
mentary were taken out, and within that time the said
Vestry had made a formal demand upon the executor for
the payment of the legacy, so that he had notice that they
had not relinquished their claim to it. The Legislature
had not been in session after the death of the testatrix,
and did not convene until after the executor had passed his
final account; but as soon as it did convene application
was made for its assent to this bequest, which was granted
by the passage of the Act of 1878, chap. 43. No *laches*
can therefore be attributed to the Vestry. It must be
assumed that the framers of our Constitution intended
that a reasonable time should be allowed for obtaining
the assent of the Legislature to such bequests, as other-
wise many of them would fail by reason of the legatees
having had no opportunity to apply for such assent, and the
Legislature no opportunity to grant it by reason of its
not being in session more than once in two years, unless
called together in extra session by the Governor. The
assent of the Legislature to this bequest was given at
its first session after the death of the testatrix, and we
are of opinion that it was in time to impose upon her exe-
cutor the obligation to pay it. The decree of the Court
below, in so far as it establishes the validity of the pecu-
niary legacies to the appellees, and their priority over
the residuary bequest to Mrs. England will be affirmed.
But as the decree is erroneous in not directing the pay-
ment of these legacies, after deducting the collateral tax
due upon them, as suggested by the appellant's counsel,
it will for that reason be reversed and the cause remanded
in order that it may be corrected in this particular.

> *Decree affirmed in part, and*
> *reversed in part and*
> *cause remanded.*