## LOGAN v. CASSIDY.

WILLS—CODICILS—RESIDUE—REMAINDERS—SPECIFIC DEVISES AND BEQUESTS.—Office, effect and rules for construing codicils stated. In this will certain bequests are revoked by inconsistent dispositions of the same legacies in the codicils, and though the devise and bequest to the widow are specific as to her, the remainder is not vested, nor is it intestate property, but passes, after falling in of life estate, under general residuary clause of the will.

*Bankhead* v. *Carlisle,* 1 Hill Ch., 367; *Dill* v. *Dill,* 1 DeS., 237, and *Glover* v. *Harris,* 4 Rich. Eq., 25, *distinguished from this case.*

Before WATTS, J., Richland, September, 1904. Affirmed.

Action by Louisa D. Logan, Edward Ehrlich and T. H. Meighan, executors of Charles Logan, against Peter Cassidy *et al.* From Circuit decree, defendants, Charles Logan and Jennie Logan, appeal.

*Messrs. Andrew Crawford, Samuel B. King* and *Jule F. Bromer,* for appellants, cite: *Estate in remainder after life estate of widow is a bequest to before-mentioned legatees:* 1 Hill Ch., 357; 1 DeS. Eq., 237. *Bequests are excluded from residuary clause:* Hill Ch., 357; 4 Rich. Eq., 25; 189 Ill., 211; 7 H. L. Cas., 697. *Devises and bequests to widow are specific:* 2 Strob. Eq., 1; 28 S. C., 317; 2 Ired. Eq., 548; 9 Price, 219; 23 N. H., 149. *Revocation of one item in part repels implication of revocation of others:* 55 Md., 365; 2 D. & S., 96; L. R. 1 P. & D., 636; 2 Bing., 475; 9 Cush., 291; 52 N. Y., 450; 164 Mass., 270; 197 Ill., 389; 53 Miss., 513; 2 C. & F., 22. *A general residuary clause will not revoke a prior residu ry clause:* 30 Beav., 226; 11 Irish Ch., 429; 3 Ad. & El. N. S. (43 E. C. L.), 811; 21 Weekly Rep., 121. *Duty of Courts in construing wills:* 2 C. & F., 22; 11 Irish Ch., 424. *"The issue of my sister,"* is one person and takes but one share: 45 Conn., 467; 39 Id., 186; 7 Allen, 72; 118 Ind., 27.

*Messrs. Shand & Shand,* for executors, contra, cite: *Instruction to sell converts entire estate into personalty:* 5 Rich. Eq., 202; 8 Rich. Eq., 79, 291; 23 S. C., 382; 25 S. C., 149; 35 S. C., 535; 62 S. C., 482. *Residuary clause passes all not otherwise appropriated:* Rich. Eq. Cas., 276; 1 Rich. Eq., 471. *As to what passes as part of the residue:* 2 Jarm. on Wills, chap. XXIII., and p. 209; O'Hara Wills, 339; 18 Ency., 2 ed., 713; 2 Wms. Exrs., 1006; 3 Atk., 199; 1 Br. Ch. Rep., 589; 6 Sim., 246; 7 Sim., 501; 4 Hare, 628; 2 M. & K., 365; 2 Ch. Div., 628; 95 U. S., 593; McM. Eq., 201; 2 Strob. Eq., 1; 2 Hill Ch., 41; 1 Hill Ch., 308; 63 Me., 368; 63 N. H., 472; 5 Allen, 556; 53 Md., 466; 17 N. E. R., 456; 35 La. Ann., 708; 18 Ency., 2 ed., 713; 1 N. & McC., 321. *As to the number of shares into which life estate should be divided, if it passes as a remainder:* 2 P. Wms., 489; 1 Atk., 494.

*Messrs. Abney & Thomson,* also for executors, contra, cite: *The remainder after life estate of widow passes as residue:* 63 N. H., 472; 1 DeG. & J., 438; 6 Sim., 246; 7 Sim., 501; 1 Coll. Ch. Cas., 498; 53 Md., 466; 95 U. S., 593; McM. Eq., 201; 2 Strob. Eq., 1; 2 Hill Ch., 41; 63 Md., 368; 14 Beav., 72; 29 L. J. Ch., 374; 2 Jar. on Wills, 209. *The legacy to James Graham being revoked, goes into the residue:* 2 Jar. on Wills, 368; 9 Rich. Eq., 244; 3 Mass., 486.

March 17, 1905. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This is an action brought by the executors of Charles Logan, deceased, praying the construction of the will and codicils of testator in sundry particulars. All parties named in the will and codicils have been made parties, except those to whom were bequeathed purely pecuniary legacies. The following is a copy of the complaint (omitting the caption):

"1. That Charles Logan, late of the city of Columbia, in the county and State aforesaid, died on the 29th day of November, 1903, seized and possessed of a considerable estate, real and personal, and leaving of force a last will and testament, with three codicils thereto, a copy of which will and codicils is hereto attached as Exhibit A, and made a part of this complaint.

"2. That by said will and codicils, Louisa D. Logan, Edward Ehrlich, T. H. Meighan and Jennie Logan were nominated and appointed as executors thereof, of whom the plaintiffs, Louisa D. Logan, Edward Ehrlich and T. H. Meighan, alone have qualified and received letters testamentary.

"3. That all the legatees and devisees under said will and codicils, interested in the questions raised by this complaint, are named as defendants to this action, the issue of the defendants, Peter, James, Charles, John and Patrick Cassidy, if any, being unknown to plaintiffs.

"4. That estate of testator is very large, probably exceeding in value the sum of one hundred and fifty thousand dollars, and as to several matters, some by reason of the wording of will and codicils, and some by reason of extrinsic facts, the plaintiffs as executors are in doubt as to their duties, and for the protection of themselves as trustees, and for the benefit of the several beneficiaries, the plaintiffs ask the direction, instruction and judgment of the Court as to the duties of the executors and the rights of the several parties defendant, in the particulars mentioned in the succeeding paragraphs of this complaint and as to all other matters arising in the construction of said will.

"5. In item 2 of the will, the executors are directed to pay to the widow during the term of her natural life, the annual or semi-annual interest, as the case may be, upon twenty-five thousand dollars, in bonds, selected from such bonds as he might die possessed of; by the first codicil, dated 16th June, 1899, 'fifty' was substituted for 'twenty-five,' as stated in

12—71.

the will.    Since the death of testator, his widow has selected,
with the concurrence of the executors, as these fifty thousand
dollars in bonds : 32 Ga. R. R. Bank Co.'s bonds; 10 C., C.
& A. R. R. bonds; 8 certificates of S. C. Registered stock,
all for one thousand dollars each.    The interest is payable
on these bonds as follows: On the Georgia Railroad and
Banking Company's bonds and the South Carolina Regis-
tered stock, in January and July of every year, and on the
Charlotte, Columbia and Augusta Railroad Company's
bonds, in April and October of every year.    And plaintiffs
ask the instruction of this Court whether the widow is en-
titled to receive the interest on these bonds when and as
paid, or should she be paid the rate of interest called for by
these securities reckoning only from the death of testator?

"6.  Does the tenth item of the will dispose of any more of
the testator's estate than the property, the life estate in
which will fall in at the widow's death?    And how and to
whom and in what shares is the property covered by this
tenth item to be paid?    And is this whole tenth item revoked
by the provisions of the latest codicil, dated 23d June, 1903 ?
These are the questions as to which the plaintiffs are in
doubt, and they ask the construction and direction of the
Court.

"7.  Does the word 'issue,' as used in the eight item of
the will, bequeath five thousand dollars to the children of
Mary Cassidy (here called Cassady) living at her death, the
children of a deceased parent taking its parent's part, or
does it give said legacy to all the issue of Mary Cassidy per
capita?    And in what sense is the word 'issue' here used?
In this matter the plaintiffs ask the construction and direc-
tion of the Court.

"8.  In the latest codicil, of June, 1903, the will gives to
the city of Columbia, which is a municipal corporation of
this State, four acres of land in said codicil described, after
the death of his widow.    Does the widow take a life estate
in said four acres, and, if not, who does?    As to this the
plaintiffs ask the direction of the Court.

"9. Shortly after the death of testator, Louisa D. Logan claimed to be the owner and holder of eight bonds of the Southern Railroad Company, and twelve bonds of the city of Columbia,. for $1,000 each, aggregating twenty thousand dollars, face value, and presented the evidence of her ownership, but the plaintiffs feel that this matter should be adjudicated by the Court, and they ask that the evidence as to this claim be taken in this action, and the order of the Court taken thereon.

"10. Since the death of testator, a claim has been presented in behalf of a street of fifty feet in width on the eastern border of a tract of land belonging to testator, known as the Race Course Tract, of which there is no record evidence, and the plaintiffs do not feel justified in yielding the demand unless authorized so to do, as to which they ask the instruction of the Court.

"11. The will in its fourth item directs 'the executors as soon as in their judgment advisable and practicable to sell all the remainder of my real and personal assets,' which they desire to do; but Louisa D. Logan, the widow, claims that she is entitled to dower in all of the real estate of which her husband, the testator, was seized during coverture, exclusive of so much of said real estate as was given to her for life; and so long as this claim is pending, the sales directed by the will cannot be made to advantage, and the plaintiffs ask the Court to instruct them whether the widow is entitled to dower, and what her dower rights are under the terms of the will and codicils of the testator, and if she be so entitled, that she may assert and establish her rights in this proceeding, and such writs or other processes issue in the case as will determine and adjust these rights."

Here follows description of lands owned by testator at his death.

"Wherefore plaintiffs demand judgment that the defendants to this action be permitted by proper pleading on their part to raise issues as they may be advised as to all the mat-

ters hereinabove called to the attention of the Court, and that the judgment of the Court be rendered upon all the questions and things which the plaintiffs, as executors, have herein brought to the attention of the Court, in the discharge of their trust, and of all other matters arising in the construction of said will, and that the costs of this proceeding be paid out of the estate."

Exhibit A, containing a copy of the will and three codicils, is as follows:

"State of South Carolina, County of Richland.
"In the name of God, Amen.

"I, Charles Logan, of the city of Columbia, in the State and county aforesaid, bearing in mind the uncertainty of life, do now make and ordain this as my last will and testament:

"That is to say: I make the following disposition of my estate, to take effect upon my death:

"*Item First.* I devise to my wife, Louisa D. Logan, all my real estate situate on the corner of Assembly and Senate streets, of the city of Columbia, of this State and county aforesaid, being lot containing in the aggregate one and one-fourth acres, more or less, together with all the buildings and improvements thereon, for her to have and to hold during the term of her natural life.

"*Item Second.* I give and bequeath to my said wife all the household and kitchen furniture, ornaments, books, provisions and fixtures in or upon the real estate mentioned in Item First, for her use and benefit during the term of her natural life; and I direct that my executors do pay her during the term of her natural life the annual or semi-annual interest, as the case may be, upon twenty-five thousand dollars in bonds, selected from such bonds as I may die possessed of, or in such bonds as my executors may purchase for the purpose; or replace upon the maturity of any of the aforesaid bonds.

"*Item Third.* In case of a deficiency of assets to provide the foregoing legacies to my wife, and those hereafter specified, there shall be no abatement of the legacies to my wife.

"*Item Fourth.* I direct my executors, as soon as in their judgment advisable and practicable, to sell all the remainder of my real and personal estate, and collect and convert into cash all my other assets, and after payment of expenses of administration, of any debts I may owe, and expending under the direction of my wife, fifteen hundred dollars, for an appropriate monument over my body, they shall distribute the net balance as follows, to wit: in payment of the following legacies:

"*Item Fifth.* I give and bequeath fifteen thousand dollars to my nephew, Charles Logan, and fifteen thousand dollars to my niece, Jennie Logan, both of Chicago, or, if either be dead without issue then living, the whole to the survivor; and if survived by issue, then such issue to represent the deceased parent.

"*Item Sixth.* I give and bequeath to James Graham, fiften thousand dollars, and the farm he now occupies, discharged of all indebtedness to me; and five thousand dollars to his sister, Sarah Gormley (who now lives in Meecargagh,, near Castlederg of County Tyrone, Ireland); or if either be dead without issue, then living, the whole to the survivor; and if survived by issue, then such issue to represent the deceased parent.

"*Item Seventh.* I give and bequeath to my brother, James Logue, of Meencargagh, near Castlederg, County Tyrone, Ireland, five thousand dollars, to him and his heirs forever.

"*Item Eighth.* I give and bequeath to the issue of my sister, Mary Cassidy, of the same place last mentioned, and their heirs forever, five thousand dollars.

"*Item Ninth.* In case any of the foregoing legatees be dead, leaving issue him or her surviving, then such issue shall represent the deceased parent; and in case any one of the above legacies cannot be given on account of the legatee

or legatees being dead without issue, then such part shall be equally divided between the other legatees hereinbefore named, so that there shall be no lapse of legacy in event of a single legatee or issue of a single legatee being *in esse.*

"*Item Tenth.* Upon the death of my wife, my executors shall sell the houses and lots, and bonds and other personal property given her for life, and divide the proceeds and any residue of my property not then disposed of, as provided in Item Ninth.

"*Item Eleventh.* I nominate and appoint as my executors to execute this my last will and testament, my wife, Louisa D. Logan, James H. Rion, Esquire, of Winnsboro, in the State aforesaid, Frank Ehrlich and James C. Graham, of Columbia, in said State.

"*Item Twelfth.* I give to my nephew, Charles Graham, the sum of five dollars.

"*Item Thirteenth.* Should any one herein named endeavor to set aside this will, or any item thereof, or in any wise endeavor to prevent its execution according to my intention herein expressed, then the provision made for him or her shall be disposed of as would be done according to this will were he or she then dead without issue him or her surviving.

"Executed on the twenty-ninth day of July, in the year of our Lord one thousand eight hundred and eighty-six.

"CHARLES LOGAN.

"Signed by Charles Logan as his last will in our presence; we three attesting hereto at his request and in his presence, and signing before each other.

"Witness: G. Stork, John C. Friday, Samuel D. Friday."

"The State of South Carolina.

"I, Charles Logan, of the city of Columbia, in the State aforesaid, do make, publish and declare this codicil to my last will and testament, which bears the date, July 29, 1886, and was executed by me in the presence of G. Stork, John C. Friday and Samuel D. Friday, as witnesses:

"*Item 1.* I revoke so much of the Sixth Item of said will as gives to James Graham a legacy of fifteen thousand dollars and a devise of the farm occupied by him, and so much of said item as discharged him from all indebtedness to me; and I further direct if Sarah Gormley, mentioned in said Sixth Item, be dead without issue then living, the said legacy to her shall not pass as in said item provided, but shall go to the said Charles Logan and Jennie Logan, of Chicago, share and share alike, but if Sarah Gormley be survived by issue, such issue shall represent Sarah Gormley, deceased.

"*Item 2.* I declare and direct that the said James Graham shall be excluded from all interest and benefit under the provisions of the Ninth and Tenth Items of this will, my intention being that he shall receive no part of my estate, either directly or immediately or as a remainderman.

"*Item 3.* I revoke the appointment of James C. Graham as one of the executors of my will.

"In witness whereof, I have hereunto signed by name this twenty-sixth day of July, in the year of our Lord one thousand eight hundred and ninety-three.     CHAS. LOGAN.

"Signed, published and declared by Charles Logan as and for a codicil to his last will and testament, in our presence— who, in his presence and at his request and in the presence of each other, have hereunto subscribed our names as witnesses to its due execution this 26th July, 1893.   Wm. J. Cathcart, Robert Moorman, Robert W. Shand."

"The State of South Carolina.

"I, Charles Logan, of the city of Columbia, in the State aforesaid, do make, publish and declare this second codicil to my will of July 29, 1886, and its first codicil of July 26, 1893.

"1. I direct that the words 'twenty-five' in the Second Item of said will, be stricken out and the word 'fifty' be substituted therefor, so that fifty thousand dollars in bonds, as a fund for producing income for my wife, be set apart as directed.

"2. I direct that every provision made for my said wife by the will or either of the two codicils shall be forfeited by her, and cease and determine upon her remarriage after my death—all of said provisions being intended for her during widowhood only, and to determine at her remarriage or death, which ever event may occur.

"3. Instead of the executors named in said will as modified by the first codicil thereto, I nominate, constitute and appoint my wife, Louisa D. Logan, my niece, Jennie Logan, of Chicago, and my friend, Edward Ehrlich, of Columbia, S. C., to be the executors of my will and codicils.

"In witness whereof, I have hereunto signed my name this 16th day of June, 1899, in the presence of my three witnesses.              CHARLES LOGAN.

"Signed, published and declared by Charles Logan as and for a second codicil to his will, in our presence, who, in his presence and at his request and in the presence of each other, have subscribed our names as witnesses, this 16th June, 1899.   Robert W. Shand, G. E. Shand, R. B. Herbert."

"The State of South Carolina.

"I, Charles Logan, of the city of Columbia, in the State aforesaid, do make, publish and declare this instrument of writing to be a third codicil to my will of 29th July, 1886, the first codicil being dated 26th July, 1893, and the second June 16, 1899.

"1. I revoke the Fifth Item of said will, and instead thereof I direct my executors to pay to my nephew, Charles Logan, and to my niece, Jennie Logan, both of Chicago, the sum of five hundred dollars to each of them annually, for and during the term of his and her natural life, respectively. I direct that these two annuities be a charge upon the income to be derived from my three houses on the north side of Blanding street, between Main and Sumter streets, in the city of Columbia, S. C., and that no sale be made of these

three houses until after the death of my said nephew and niece.

"2. I give and bequeath to 'The City of Columbia,' a municipal corporation of the State of South Carolina, the sum of nine thousand (9,000) dollars, in trust to divest (invest) the same and use the income therefrom, as in their judgment deems best, in enforcing within the corporate limits of said city the laws of the State and the Ordinances of said city in relation to cruelty to animals. If 'The City of Columbia' refuses or fails within a reasonable time to accept the trust hereby imposed upon it, then the said sum of nine thousand dollars shall pass as a portion of my residuary estate.

"3. I give and devise unto and to the use of the said 'The City of Columbia,' and its successors, after the death of my wife, four (4) acres of my race course track of land on Elmwood avenue, in the city of Columbia, the said four acres to be so laid off as to be bounded north by the present northern boundary line of said city, east by W. A. Clark, south by said Elmwood avenue, and west by a straight line drawn at right angles from Elmwood avenue to the northern boundary line of the city, in trust, nevertheless, that 'The City of Columbia' and its successors will devote the same to the following uses and purposes exclusively, that is to say: the said devised four acres on Elmwood avenue shall be used for a public school as hereinafter provided for, and for school grounds appurtenant thereto, upon which four acres 'The City of Columbia' shall erect, or cause to be erected, within three years after my wife's death (or, if she predecease me, then within three years after my death), a proper building for a public school, elementary or high, to be named 'Logan School' or 'Logan High School,' as the case may be, and shall cause within the same time, a school with teachers to be opened therein for pupils, which shall be free and open without charge to white children of said city, under the laws and regulations governing the free public

schools of said city, and to which other white children may be admitted upon such terms as may be prescribed by the proper authorities of said school.

"4. I give and bequeath to 'The City of Columbia,' after the death of my wife, the sum of forty thousand (40,000) dollars, in trust to expend the same in erecting or causing to be erected on the land devised in Item 3 of this codicil the said 'Logan School' or 'Logan High School.'

"5. If 'The City of Columbia' and its successors shall fail to accept said trusts and cause said school building to be erected within the time above limited, or fail to give to the school the name above named, or shall at any time hereafter change said name, or divert said property to other uses, or cease to maintain said school and to use the land and building so erected for the purposes hereinabove specified, the property devised and bequeathed in Item 3 and 4 of this codicil shall revert to my estate and pass as a part of the residue.

"6. I appoint T. H. Meighan to be one of the executors of my will and codicils in addition to those named in Item 3 of the codicil dated June 16, 1889.

"7. I direct my executors to keep fully insured during the term of their trust, the three houses on Blanding street mentioned in Item 1 of this codicil, and to restore such as may be destroyed or injured.

"8. Out of the residue and rest of my estate, I direct the following legacies to be paid: to Saint Peter's Roman Catholic Church of Columbia, S. C., to the Columbia Hospital of Columbia, S. C., to Dick Keenan, of Columbia, S. C., and to Mrs. Mary Brasline, of New York, five thousand dollars, each; to the two daughters of said Mrs Mary Brasline, twenty-five hundred dollars, each; to George Keenan, Thomas Boyne, Mrs. E. H. Boyne, Mrs. Sarah Alexander, and my nephew Charley Graham, all of Columbia, S. C., one thousand dollars each. And all the residue of my estate I give, devise and bequeath in two equal shares—one

share to my brother James Logan, or if he be dead to his issue living at the time of my death, per stirpes, and one share to the issue of my sister Mary Casido, per stirpes, living at the time of my death.

"Signed and executed at Columbia, S. C., this twenty-third day of June, A. D. 1903.         CHARLES LOGAN."

"Signed, published and declared by Charles Logan, of Columbia, S. C., as and for a third codicil to his will, in our presence, who, in his presence and at his request, and in the presence of each other, have hereunto subscribed our names as witnesses, this 23d June, 1903.   Robert W. Shand, E. N. Chisolm, Jr., W. M. Shand."

The cause came on to be heard before his Honor, Judge Watts, and the following decree was rendered by him:

"This is an action brought by the executors of Charles Logan, deceased, praying the construction of the will and codicils of testator in sundry particulars.   All parties named in the will and codicils have been made parties, except those to whom were bequeathed purely pecuniary legacies.

"The matters referred to in paragraphs 5, 8, 9 and 11 of the complaint have already been passed upon in my decretal order of July 22d, last.

"In answer to the request for instructions contained in paragraph 7 of the complaint, I hold that the word 'issue,' in the eighth item of the will, was used to denote 'children.' This is made so to appear by the language used as to these same issue in the next succeeding item.

"In connection with the 10th paragraph of the complaint, and under the prayer for relief, it is ordered, adjudged and decreed, with the assent of all parties before me, that the four acres therein devised be so laid off as to be bounded north by northern boundary of the city of Columbia, south by Elmwood avenue, east by a street of sixty feet in width, separating it from lands now or formerly of W. A. Clark, and west by a line drawn parallel to its eastern line.   This

change in the boundaries as directed by the last codicil is made because all counsel agree that the boundaries named by testator will not embrace so much as four acres. It is further ordered and decreed, that the qualified executors do execute and deliver to the Richland Real Estate Company, a deed granting to that company, its succesors and assigns, a right of way thirty feet in width along the eastern boundary of Charles Logan's Race Course tract, in consideration of a deed from said company whereby it will grant a right of way of equal width over their land east of and adjoining said Race Course tract so as thereby to create a street sixty feet in width and also releasing said estate from any claim to any other right of way across said Race Course tract.

"The remaining and most important matter for consideration is suggested by the sixth paragraph of the complaint, which reads as follows : 'Does the tenth item of the will dispose of any more of the testator's estate than the property, the life estate in which will fall in at the widow's death? And how and to whom and in what shares is the property covered by this tenth item to be paid? And is this whole tenth item, revoked by the provisions of the latest codicil, dated 23d June, 1903 ? These are the questions as to which the plaintiffs are in doubt, and they ask the construction and direction of the Court.'

"In the interpretation of a will and codicils, both must be read together as a whole; but the codicil being the later expression of testator's intention, revokes whatever there is in the will inconsistent with the provisions of the codicil. And in the construction of these instruments intention is said to be the pole star to guide us. Or, as is said in *Simons* v. *Bryce,* 10 S. C., 363 : 'The controlling rule in the construction of a will, is the intention of the testator. Hence, if we can discover from the language of testator what his intention was, we must construe the will in accordance with such intention, provided the same is not in violation of law.' To reach a proper conclusion as to testator's intention, each and every part of will and codicils must be considered.

"With this in mind, there is no difficulty in reaching the conclusion that, by the original will, testator gave to his widow for life his home place, with its furniture and appointments, and $25,000 in bonds, and that to this extent she was made a preferred devisee and legatee; that the remainder of his property was to be sold by his executors, and that out of the proceeds thereof, $1,500 was to be expended for a monument, $15,000 paid to Charles Logan, Jennie Logan, and James Graham, each; $5,000 to Sarah Gormley, $5,000 to James Logue, $5,000 to children of Mary Cassidy, between them, and $500 to Charles Graham, to go, however, upon the death of any of them (except Charles Graham) before testator, to their issue, or, if no issue, to the others named in the respective items of the will.

"Upon the death of his wife, testator directed his executors to 'sell the houses and lots and bonds and other personal property given her for life, and divide the proceeds and any residue of my property, not then disposed of, as provided in item 9.'

"The first codicil simply took away from James Graham all interest whatsoever in testator's estate. The second codicil increases the amount of bonds to be set aside as a fund for producing income for his wife from $25,000 to $50,000; and declares that every provision made for his wife should cease upon her remarriage.

"These two codicils dealt with single points. The third and last codicil is as long as the will, and deals with several matters. It revokes the legacies to Charles and Jennie Logan, and 'instead thereof' gives them annuities which he charges upon certain real estate, although he does not in terms declare a revocation of the tenth item of his will. He then gives $9,000 to the city of Columbia to aid in the prevention of cruelty to animals; he next devises four acres of land to the city of Columbia after his wife's death for school purposes; he next bequeaths to the city of Columbia, 'after the death of my wife,' $40,000 for school purposes; he then

bequeaths $30,000 in the aggregate 'out of the rest and resi-
due of my estate,' and finally declares: 'and all the residue
of my estate, I give, devise and bequeath in two equal
shares,' one to his brother James and the other to the issue
of his sister Mary Cassidy.

"All of these several provisions bear upon the question,
whether the codicils have revoked the tenth item of the will.
It is conceded that this tenth item of the will has been re-
voked as to James Graham by the express direction made
in the first codicil.  It is also conceded that the disposition
of 'any residue of my property not then disposed of,' in
item 10, has been revoked, not by express declaration of
revocation, but by later inconsistent disposition of the resi-
due in the last item of the latest codicil.  And it is an un-
questioned rule of law that a codicil will revoke the pro-
visions of a will as effectually by inconsistent direction as
by express declaration.

"What was the extent of the estate given by this 10th
item prior to the execution of any of the codicils?  It ap-
propriated the remainder of the life estate, after the death
of the widow, and also 'any residue of my property not then
disposed of;' in other words, such remainder and all the
rest of the residue.  Having carved out a life estate, and
provided for certain pecuniary legacies, the residue of his
estate consisted of what was not disposed of, to wit: the
rest of his estate, including the remainder in the property
to his widow for life.  When, therefore, the testator di-
rected such remainder to be converted into money, and the
proceeds of such remainder and any residue of his estate
to be divided between certain legatees, he intended merely
to give to these legatees his whole residuary estate.  And
the language used by him clearly shows this intent; for the
enumeration of one or more particulars of his residuary
estate, followed by a general expression which would include
all of such particulars and all else besides, manifest a pur-
pose to dispose of the general residue as a whole.  There-

fore, the 10th item of the will was simply a direction to convert the property of the life estate into money, followed by a general residuary clause, bequeathing all of the estate not disposed of by other clauses of the will. And this disposition of the residue by the will is inconsistent with the later disposition of the residue by codicil, and, therefore, is revoked, so far as said tenth item makes appropriation of the remainder after the life estate and of the other portion of the residue. This intention of the testator is confirmed by some of the provisions of the codicils.

"The testator by his will (as amended by his second codicil) gives to his executors $50,000 in bonds, the income of which is to be paid to her for life. By his last codicil he bequeaths to the city of Columbia, 'after the death of my wife, the sum of $40,000.' Here, then, we have $50,000 to the wife for life, and $40,000 'after the death of my wife' to another. Do not these provisions manifest an intention, clearly shown by the express directions of the testator, that the $40,000 given to the city at a fixed future date was to be the greater part of that $50,000, which was to be taken away from the widow at that same fixed day? It would require an express declaration to the contrary to justify a decision that the two were independent dispositions of different funds.

"It is true that an estate by implication will not be raised in favor of a person named because of a devise to another after the death of such person, unless such other be the heir; and while some authorities hold that this principle is only because an heir is a favorite of the law, and that it does not apply in cases of personalty, the weight of authority holds the rule applicable to cases of bequests as well as to cases of devises. But where a fund is given to a legatee after the death of another to whom has been given for life a fund of equal or greater amount, the presumption is irresistible that the same fund was in the contemplation of the testator. This furnishes a reason, the only conceivable reason, why

the legacy to the city of Columbia was not to be paid over until the widow's death, and explains why the four acres should not vest in the city, until the building fund was ready to be paid. This being so, we have the 10th item of the will revoked by inconsistent provisions as to the residue and as to $40,000 of the $50,000 in bonds set aside for the widow's lifetime.

"If the remainder in the property given to Mrs. Logan for life had been disposed of under item ten of the will, then the question would arise, into how many shares? Under the will standing alone, it would be devisable into six shares. Graham's share being eliminated, it is claimed that it would be divided into five shares. But it seems that the remaining five would only take one-sixth each, and the remaining one-sixth would pass as part of the residue declared in the codicils. See 2 Jarm. Wills (R. & T.), 386; *Brownell* v. *DeWolf,* 3 Mass., 486; *Coffin* v. *Elliott,* 9 Rich. Eq., 244.

"These inconsistencies of the last codicil with the 10th item of the will, together with the expressed disposition of item eight of the codicil of June 23, 1903, manifest an intention on the part of testator that the 10th item of the will should no longer be operative; that Charles Logan and Jennie Logan should receive the annuity of $500 each, and no more; that Sarah Gormley should receive only what is given her by item 6 of the will; that James Logue and the issue of Mary Cassidy should receive the pecuniary legacies mentioned in items 7 and 8 of the will, and also the residue of the estate under item 8 of the latest codicil.

"Therefore, it follows that the estate not set apart for the widow for life and not necessary to provide the annuities left after payment of debts and expenses and the pecuniary legacies named in the will as amended by the codicils, is payable, one equal share to James Logue and one equal share to the children of Mary Cassidy; that the four acres of the Race Course tract, hereinabove defined, and $40,000 out of the proceeds of the $50,000 in bonds, held in trust for Mrs.

Logan for life and to be converted into money after her death, should be turned over to the city of Columbia after Mrs. Logan's death, to be held by said city under the provisions of the codicil of 1903, and that the remainder of said life estate, at its termination, converted into money, and the property retained by the executors to produce the annuities to Charles and Jennie Logan, should also be paid over at their respective deaths, one equal moiety to said James Logue and equal moiety to the children of Mary Cassidy. These are rights which vested in James Logan and in the children of Mary Cassidy on the death of Charles Logan, the testator.

"Let the costs of this case be paid out of the funds of the estate in the hands of the executors, and let the cause remain on the docket of this Court, with leave to the parties to apply for further directions. R. C. WATTS.

"September 17, 1904. Presiding Judge."

An appeal was taken therefrom by Charles Logan and Jennie Logan on the following grounds:

"1st. Because his Honor holds that it is conceded that the disposition of 'any residue of my property not then disposed of,' in item 10, has been revoked by later inconsistent disposition of the residue in the last item of the latest codicil; the Court having overlooked in this respect clause C, paragraph 3, of the answer of these appellants, in which it is specifically claimed that the residuary clause in item 10th of the original will is not revoked by the third codicil, and that these appellants are entitled to share in the residuary estate.

"2d. Because his Honor should have held, that the direction in the 10th clause, that the proceeds of the real and personal property given to the widow for life should be divided according to the provisions of the 9th clause (which directs distribution among all the legatees 'heretofore named,') constituted a specific *bequest,* as contradistinguished from a residuary disposition, to the legatees named in the items standing prior in position to the 9th item of the will, among whom are these appellants.

13—71.

"3d. Because his Honor held that, because the testator, in the 10th clause in the original will, directed the remainder of the real and personal estate devised to the widow, which existed after carving therefrom of the life estate in favor of the widow, to go to the same person as those to whom he directed his residuary estate should go, an inference may be drawn that the testator regarded such remainder as residuary estate; whereas, the Court should have held that the direction of the testator in said item 10th, to divide the proceeds of any property given the widow for life and 'any residue of my property not then disposed of,' clearly shows the contrary intent of the testator in this, to wit:

"(a) The word 'and,' occurring after the word 'proceeds,' in the following sentence of the 10th clause of the original will, 'my executors shall sell the house and lots and bonds and other personal property given her for life, and divide the proceeds, *and* any residue of my property not then disposed of,' evidences a classification by the testator of his property into two groups and two forms of dispositions, the one including the proceeds of the property given the widow for life (which is the property claimed by these appellants) ; the other is undisposed, *i. e.,* residuary estate; as manifested by limiting the words 'any residue' by the immediately following words, 'not then disposed of.'

"(b) His Honor himself really recognizes this distinction and classification in the language of the decree, that 'said 10th item makes an *appropriation* of the *remainder* after the life estate, and of the *other* portion of the residue;' and since his Honor recognizes this distinction and the fact of the 'appropriation of the remainder after the life estate,' the decree is contradictory in ignoring this difference, as is done by treating this *appropriated* property as residuary estate, which never includes 'appropriated estate,' but consists of that which is not appropriated by the disposition of the will.

"4th. His Honor erred in holding that the enforcement of that portion of the tenth clause of the will which dis-

tributes amongst the legatees therein named the proceeds of the property given to the widow for life, is inconsistent with the provisions of the third codicil, because his Honor failed to take into consideration the fact that the estate coming to the hands of the executors was appraised at at least $194,000, and the legacies (treating the $50,000 given to the widow as a specific bequest to these appellants and the other original legatees) amount to but $160,000; so that both of such intentions can be given effect without either of them cancelling the other.

"5th. His Honor should have held that where a bequest is given in clear language, it cannot be revoked by implication, nor by any terms, excepting in terms as clear as those by which the gift is created; and since the only specific revocation of any part of the 10th clause of the original will is the specific revocation of the right of James Graham to participate therein, an intention on the part of the testator must be presumed, to leave that clause undisturbed as to the others whose benefits were thereby contemplated.

"6th. His Honor erred in inferring from the fact that the $40,000 given to the city of Columbia was postponed to the death of the widow, that the testator thereby showed an intent that said $40,000 should be paid out of the real estate, and the $50,000 of bonds given the widow for life, because

"(a) His Honor overlooked the true reason for such postponement to the widow's death of the payment of said legacy, afforded by the fact that said $40,000 was coupled with a bequest of real estate for school purposes, upon which the $40,000 was to be spent; and since the widow was entitled to dower interest therein, which might continue until her death, said $40,000 might remain idle until the expiration of the dower estate, occurring by reason of the widow's death.

"(b) his Honor, in inferring that the $40,000 bequest to the city of Columbia was to be paid from the proceeds of the sale of the bonds given to the widow for life, wholly ignores the fact that there is no such direction in the will or

the codicil themselves. His Honor erred in giving to the fact that the $40,000 is payable at the same time the proceeds of the sale of the property given to the widow for life might be realized, an effect which the testator refrained from expressing, that the one was to be payable from the other, because terms not expressed nor hinted at, cannot be read into a will upon the basis of mere coincidence.

"(c) His Honor errs in holding that the bequest to the widow for life of bonds amounting to $50,000 and real estate amounting to $10,000 more, and the bequest to the city of Columbia of $40,000 to be paid at her death, is the case of 'a fund given to a legatee after the death of another to whom has been given for life a fund of equal or greater amount;' because the bequest to the city of Columbia is not a fund, nor of anything specifically distinguishable, but is the bequest of a sum of money; neither are the devises and bequests to the widow of real estate and bonds, a fund, but was a bequest of specific personal and real property, the value of which do not approximate within $20,000 the amount given to the city of Columbia, and made payable at the widow's death.

"(d) An inference of the testator's intention to revoke a bequest, based upon the supposition that such an inference would better harmonize with the other provisions of the will, cannot supply the absence of an express revocation.

"7th. His Honor should have held that there cannot be a revocation partly expressed and partly implied; consequently the express revocation in the first item of the third codicil of a part of the benefits given to these appellants by the original will, that is, $15,000 each, amount to an affirmance of the other provisions for their benefit not included in the revocation, that is, their rights under the tenth clause of the original will; and the fact that there is this limited revocation, which is an express revocation as distinguished from an implied one, excludes an implied revocation because of the canon of construction that an express stipulation and an implied one cannot coexist in the same place.

8th. His Honor errs where he assumes for the time being that appellant's contention may be correct, and holds that the one-sixth share of James Graham would become residuary estate in any event; and that the others would take but one-sixth each of the proceeds of the property given to the widow for life; because his Honor ignores the language of the ninth clause, which the tenth clause adopts, 'that there shall be no lapse of legacy in the event of a single legatee or the issue of a single legatee being *in esse.*'

"9th. His Honor errs in holding that a residuary legacy is to be construed liberally as against prior testamentary dispositions; whereas, he should have held:

"(a) That a residuary clause is construed with the utmost strictness as against prior testamentary dispositions, and will operate only upon such property as cannot be included under any prior testamentary disposition.

"(b) That the peculiar scheme of the eighth item of the third codicil shows that the strictest construction of a residuary clause was present to the mind of the testator, as evidenced by the fact that there is $30,000 of legacies charged upon the residuary estate, generally, and then follows the last residuary clause, which is the one in controversy here, which gives a residue of the residuary estate.

"10th. His Honor ought to have held that the last residuary clause being by its express terms operative upon the residue of the residue only, was intended to operate only upon the contingent residue which might arise by the falling-in of the bequests in the second, third, fourth and fifth clauses of the third codicil, by reason of the non-fulfillment of the conditions upon which said legacies are limited.

"11th. His Honor ought to have held:

"(a) That the proceeds of the property given to the widow for life, is distributable at her death as follows: One-fifth to Charles Logan, one-fifth to Jennie Logan, one-fifth to Sarah Gormley, one-fifth to James Logan, one-fifth to the issue of Mary Cassidy; and that the interest of each of said persons

is a vested remainder in such persons which, in the event of the death of any one of them before the death of the widow or before distribution, will pass to the personal representative of any of them who may so die.

"(b) That as to the legacies bequeathed by the eighth item of the third codicil, amounting to $30,000 and chargeable upon the residue of the estate and all legacies prior thereto, the assets of the estate are such that they will be paid without the necessity of resorting to the proceeds of the sale of the property given to the widow for life.

"(c) That as to any excess of the assets of the estate remaining after the payment of all the particular legacies (including as a particular bequest the right of the appellants and the other legatees in the original will similarly situated, to the proceeds of the sale of the property given to the widow for life), it is distributable under the tenth clause of the original will, as follows: One-sixth to Louisa D. Logan, widow, one-sixth to Charles Logan, one-sixth to Jennie Logan, one-sixth to Sarah Gormley, one-sixth to Jennie Logan, one-sixth to issue of Mary Cassidy; and the right of said persons to such distribution is a vested right, which vested at the time of the death of the widow, and the share, shall pass to the personal representatives of such person so dying.

"(d) Any residue which may arise by the falling-in of the bequests in the second, third, fourth and fifth clauses of the third codicil, by reason of the non-performance of the conditions upon which such legacies are limited, shall be distributable under the last clause of the eight item of the third codicil, as follows: One-half to James Logue (Logan) and one-half to the issue of Mary Cassidy, who shall take per stirpes and not per capita; and that the right to such distribution is a contingent interest."

We will confine our attention to the objections urged by the appellant against the decree of his Honor, the Circuit Judge. These questions relate to the construction of the

will and codicils thereto of Charles Logan, and as directly affecting the interests of Charles Logan and Jennie Logan, his sister, who are the appellants. The office of a codicil or codicils is *thus* stated in vol. 6, 2d edition of American and English Encyclopedia of Law, page 175.

"A codicil is a supplement or an addition to a will, made by the testator, to be taken as part of the testament, and having for its object the explanation, modification, addition to, subtraction from, or alteration of, some or all of the provisions contained in the will. A codicil may confirm, re-execute, revive, republish, or revoke any will with which it may be incorporated." Page 186 bb, A. & E. Ency. of Law, vol. 6: "Where, however, there are clauses in a codicil irreconcilable and inconsistent with clauses in the will, the provisions of the codicil, as the last indication of the testator's mind, must prevail, and to the extent of the inconsistency revoke the clauses of the will."

The foregoing definition is in exact accord with what is said in the case of *Jane Floyd* v. *Howser, as administrator*. The language in 1 Nott & McCord, page 322, is as follows: "The codicil being but an expression of the testator as to disposing of his estate, shall take effect, though repugnant to some of the clauses of his will, and will be considered as a revocation of all such as are inconsistent with its provisions. 'Where a codicil is said to be a part of or incorporated into a will, this union must be understood to be the effect of its first acting upon the will by its own force as directing it to itself.' 'The business of the codicil,' says Powell on Devise 24th, 'by intendment of law, was to alter, explain, add, or subtract something from the will.' And again, on pages 541-546: 'A codicil likewise, if inconsistent with the preceding will, is, in law, a revocation of it. That is, so inconsistent that both cannot stand.' "

The object of all constructions of a will and the codicils thereto is to ascertain what the intention of the testator is,

as is well said in *Simons* v. *Brice,* 10 S. C., 368. The appellant contends, "the disposition by item 10 of the will, of the estate in remainder of the property devised and bequeathed to the widow for life, constitutes a bequest thereof to the legatees whose bequests stand prior to item 9th of the will."

Now, how stands this announcement of the effect of item 10th when contrasted with the codicils here presented? What is the language of item 10th? "Upon the death of my wife my executors shall sell the houses and lots, and bonds and other personal property given her for life, and divide the proceeds and any residue of my property not then disposed of, as provided in item 9th." Item 9th is in these words: "In case any of the foregoing legatees be dead leaving issue him or her surviving, then such issue shall represent the deceased parent; and in case any one of the above legacies cannot be given on account of the legatee or legatees being dead without issue, then such part shall be equally divided between the other legatees hereinbefore named, so that there shall be no lapse of legacy in event of a single legatee or issue or a single legatee being *in esse.*"

The legatees included in the language "the foregoing legatees" are Charles Logan and Jennie Logan, in item 5th; James Graham and his sister, Sarah Gormley, in item 6th; James Logan, in item 7th; and Mary Cassidy, in item 8th. That is, as provided by the will itself, but by item 1 of codicil 1, the legacy of James Graham is entirely destroyed, and by item 1 of the third codicil, the legacies of Charles Logan and Jennie Logan, his sister—legacies of fifteen thousand ($15,000.00) dollars each—are destroyed, and instead thereof an annuity of five hundred ($500.00) dollars each is directed to be paid by his executors from the rents of testator's buildings on Blanding street, between Main and Sumter streets, in the city of Columbia, South Carolina. By the express terms creating the annuities, hereinbefore spoken of, they are limited to the life of the said Charles Logan and Jen-

nie Logan, respectively.    There may be a question thereon, as to whether the said parties, Charles Logan and Jennie Logan, are any longer entitled to be considered two of the "foregoing legatees."    The language of the first clause of the third codicil lends some force to the suggestion, for the testator therein stated: "I revoke the fifth item of said will and instead thereof I direct my executors to pay to my nephew, Charles Logan, and to my niece, Jennie Logan, both of Chicago, the sum of five hundred dollars to each of them annually, for and during the term of his and her natural life, respectively."

It will be noted again that these annuities are not said to take the place of the legacies named in item 5th, but that item is declared by the testator to be revoked; but apart from all this and it being, for the purpose of the argument, admitted that the annuities become the body of said item 5th, that will not cover the question which would be hereinafter presented.    The appellants still insist "that the remainder of the property devised and bequeathed to the widow for life, constitutes a bequest thereof to the legatees, whose bequests stand prior to item 9th of the will."    In other words, the appellants insist that the bequests to each of them of their shares of testator's widow's life estate, after her death or marriage, were vested remainders, and do not pass through a residuary clause.    They rely upon *Bankhead* v. *Carlisle,* 1 Hill's Ch., 357 and 358; *Dill* v. *Dill,* 1 DeSaussure's Eq., 234, 237; *Glover* v. *Harris,* 4 Rich. Eq., 25, 36.

*Bankhead* v. *Carlisle, supra,* arose in this way: By the 12th clause of testator's will, he uses this language: "I lend to Elizabeth Glenn, my beloved wife, during widowhood (or life in case she does not marry) all my estate, real and personal, not stipulated as aforesaid, consisting of a tract of one hundred and fifty acres of land, in Union District and State aforesaid, on Broad River, one other tract of one hundred and fifty acres of land in Chester District and State aforesaid, on Broad River, being the place whereon I now

live; also eleven negroes, namely, Aaron, Esther, Mary, Mourning, Asga, Samuel, Cato, Pompey, Jesse, Jacob and Milley with their increase, if any they shall have; and also all my stock of horses, cattle, sheep and hogs; which said property I wish and devise at the marriage or death of my beloved wife, to be equally divided amongst my children, as above named, with one exception, relative to (the) dividend or share falling to my beloved daughter, Hannah Carlisle, which is, I lend to her such dividend or share, during her life, and at her death to go to the heirs of her body." The testator's son, Gideon, survived him, but was survived in his turn by the testator's widow, who continued discovert until her death. On her death, the original executors of the testator being dead, the defendant took out letters of administration *de bonis non* with the will annexed, and possessed himself of so much of the personalty in which she had the life interest under the will, as remained or he could find; and declined to account to the plaintiff for one-tenth of it, which he claims as the administrator *de bonis non* with the will of Gideon Glenn annexed. The bill is filed among other things to compel such account. The Judge said: "The only question argued before me is, therefore, the only one I am to decide and relates to the interest which Gideon took in the personal property under the 12th clause of his father's will." The plaintiff contending that he took a vested remainder, which was not lost by his dying before his mother; the defendant, that his was a mere contingent interest, which lapsed by his death before the happening of the event upon which his vesting depended. The Judge held: "That while in point of form the property was not limited over to the testator's children on their mother's death or marriage, yet he held the directions to divide it among them substantially includes a bequest of it to them. Gideon survived his father, the testator, and was ready to take whatever passed by the will; he could have taken it the day of his father's death, and was withheld only by the preferable right of enjoyment,

which the will conferred on his mother. Here, then, was the
present capacity to take whenever the possession should be-
come vacant. This is the test of a vested interest. * * *
The plaintiff is entitled to the account he claims." There
was no reference to a codicil in this case.

In *Dill* v. *Dill, supra.* the question was on the construction
of the residuary clause of the will. The Court held : "Such
construction should be made as would give effect to all parts
of the will." There was no question here of the effect of
a codicil.

*Glover* v. *Harris*, 4 Rich. Eq., 25 : "The testator intend-
ing 'for his worldly estate to dispose thereof,' devise and
bequeath as follows : 'I lend to my wife, J. G., the use of
one-half of my land (describing it) and five negroes' (nam-
ing them) ; after other bequests, the will contained the fol-
lowing residuary clauses, to wit : 'It is my will that at my
decease all of the property which I possess and have not
bequeathed, be sold on a credit of one and two years, and
for my debts to be paid out of the debts which are due me,
and the money arising from the sale of my property ; and
the balance be put out at interest for the use and support of
my children,' &c.

"Held (1) that the five negroes did not pass to the wife
absolutely, but for life only ; (2) that the reversion after her
death did not pass under residuary clauses, but was intestate
property. * * * It is remarkable that there is no general re-
siduary clause on this testamentary paper. * * * In this will
there is no specific disposition of these slaves beyond the life
interest of Mrs. Glover. * * * The result of my opinion is
that the will of Glover operated only to dispose of these
negroes during his wife's life, and the remainder in them
was intestate property of his estate."

The foregoing in effect is what this case decides. The
verdict of these decisions seems to give color to appellants'
propositions one and two, which are as follows :

"I. (a) The disposition, by item ten of the will, of the estate in remainder of the property devised and bequeathed to the widow for life, constitutes *a bequest* thereof to the legatees whose bequests stand prior to item ninth of the will.

"(b) All bequests are necessarily excluded from the scope of a residuary clause."

"II. (a) The proceeds of the sale, directed to take place at the death of the widow, of the property devised and bequeathed to her for life, is a *remainder*.

"(b) An estate in remainder, undisposed of by the will, will not pass to the residuary legatee under a residuary clause."

We think the respondents, with show of reason, properly insist that under the facts of this case it should be "the proceeds of the sale directed to take place at the death of the widow, of the property devised and bequeathed to her for life, and to be divided along with the residue of the estate. made the remainder, after the termination of the life estate, a part of the residue."

"III. (a) The devise of the real estate and the bequest of the income of the bonds, to the widow, for life, are specific devises and bequests. (b) And a specific legacy is not affected by a general residuary clause."

We think that (a) of proposition III., is correct so long as only the life estate in the property is affected. In *Goddard* v. *Wagner,* 2 Strob. Eq., 1, as to one clause of the will in that case referred to by appellants, the Court held the specified property directed to be divided between testator's eight grand-children was a specific legacy; but it also held, as to the specified articles in the residuary clause, that they were simply parts of the residuary bequest.

As to subdivision (b), which states that a specific legacy is not affected by a general residuary clause, it is true as a proposition of law so far as the life estate itself is concerned, but after the termination of the life estate ceases to be longer specific and passes under a general residuary clause. In

*Pitt* v. *Benyon*, Br. Ch. Rep., 589: Gift of a particular sum to P and B for life, with remainder to residuary legatees to be after named, and gift of the residue to P and B, as tenants in common. P died, B survived. Thurlow, L. C., held that the remainder after the termination of the life estate went to P and B, as tenants in common, and not as joint tenants, and, therefore, B, the survivor, was not entitled to P's share. *Taylor* v. *Taylor*, 6 Sim., 246; *Mills* v. *Mills*, 7 Sim., 501; *Pickup* v. *Anderson*, 4 Hair, 628; *Given* v. *Hilton*, 95 U. S., 593; *Seabrook* v. *Seabrook*, McM. Eq., page 201; *Goddard's Executor* v. *Wagner*, 2 Strob. Eq., 1; *Conner* v. *Johnstone*, 2 Hill's Ch., 41.

In this last mentioned case the testator left the bulk of his estate to his wife for life. After disposing of various portions of it, the last clause declared: "My will is that after the death of my wife the tract of land on Indian Camp and all the rest of my estate not otherwise disposed of shall be equally divided between * * *" In this case the Court held, that the foregoing was a general residuary clause.

In the case of *Stuckey* v. *Stuckey*, 1 Hill, 308, where a thousand dollars left by the testator had not been specifically enumerated, yet the language of the general residuary clause was held to include the same. Also, in *Swinton* v. *Eggleston*, 3 Rich. Eq., 201, the words, "all the property not specified in this my will, whatsoever, howsoever and wheresoever it may be found, which I now hold or hereafter I may hold," were held to be a general residuary clause.

*Lord* v. *Bourne*, 63 Me., 368, 18 Am. Reports, 234: Testator gave to his wife one thousand dollars in money and all his household furniture, plate, etc.; also, the use of his homestead and income from six thousand dollars during her life. He also gave specific bequests to others. The 13th clause of his will was as follows: "The reversion of the foregoing life estate given to my wife and all of the residue of my property, real and personal, I give to my legal heirs." The Court treats all of the 13th clause as only a disposition of the residue.

In *England* v. *Vestry,* 53 Md., 466, "A devise of a lot of land, 'all my household and kitchen furniture, stocks, bonds, notes and other evidences of debts, and all the rest and residue of my estate, real, personal and mixed,' was held to be a general residuary bequest." At page 471 of the same case, the Court uses these words: "Nor does the enumeration of some particular articles in a residuary clause of a will constitute the articles so enumerated specific legacies."

IV. "Appellants were legatees under both the *fifth* item and the *tenth* item of the will, there was a revocation of the *fifth* item only, *i. e.,* a partial revocation. This repels any implication of a revocation of the *tenth* item, or any further revocation whatsoever." In this proposition of appellants' argument they assert that appellants were legatees under both the fifth and tenth items of the will. There was a revocation of the fifth item only, *i. e.,* a partial revocation. This repels, they say, any implication of a revocation of the tenth item, or any further revocation whatsoever. This is correct, as far as it goes, but respondents claim that it is not the only rule of construction applicable to the case at bar, for they claim to have shown that things enumerated in a general residuary clause pass as a residuary bequest and not as specific gifts. They think that item 10th of the will disposes only of the residue, and that item 8th of the latest codicil clearly disposes of the residue. Therefore, there is a manifest repugnancy, and item 10th of the will is thereby necessarily revoked without resort to implication. They give this illustration: "Suppose a testator by his will devises White Acre to A by item 2 and Black Acre to B by item 3; that by codicil he expressly revokes item 2 and devises White Acre to C, and in same codicil, *without declaring a revocation of item 3,* he devises Black Acre to D. Would not D be the devisee of Black Acre? But residue is quite as descriptive as Black Acre would be, and in the case at bar, testator has given the residue by codicil to others than those to whom he had given it by his prior will. It is, therefore, as much a revocation as if he had said, 'I revoke Item 10.' "

We think that there is great force in the answer made by the respondents here. The illustration made is very apt.

V. "A general residuary clause, following upon provisions that lapsed legacies shall fall into the residuary estate, will embrace lapsed legacies, and will not even revoke a prior residuary clause." We cannot subscribe to the views of the appellants on this proposition. (See Ch. Johnstone's decree in the case of *Bailey, as executor of Goddard,* v. *Wagner,* 2 Strob. Eq., page 2.) Really, this is a matter of construction. By a construction of the will and codicils of Charles Logan, it does seem to us that it is manifest beyond a doubt that the language of item 8 in the third and last codicil, that whatever is left of Charles Logan's estate after the life estate of his widow falls in and the annuities of Charles and Jennie Logan are paid and the specific bequests are settled, that the residue then remaining is to be equally divided between James Logan on the one part, and the issue of Mary Cassidy on the other.

VI. "It is the duty of courts to seek that construction of a will which will permit every clause to stand, and avoid a construction which will raise a repugnancy." We heartily subscribe to this doctrine of the law.

VII. "The issue of my sister, Mary Cassidy, mentioned in the 8th item of the will are considered as one person and take but one share." This is true in the 8th clause of the will just as it is in the 8th clause of the third and last codicil, but this is of no avail to the appellants, and is no part of the appeal here, as we hold that the 10th clause of the will, except where it directs a sale after the death of the life tenant, Mrs. Louisa D. Logan, of the life property, is cancelled.

We have thought it advisable to take up the several propositions of law submitted by the appellants to the end that they may be convinced that this Court has endeavored to cover this their appeal. Otherwise we would have contented ourselves with affirming the decree of the Circuit Court, with which we are perfectly satisfied, except in the single instance

where the Circuit Judge inadvertently stated as follows: "It is also conceded that the disposition of 'any residue of my property not then disposed of,' in item 10th, has been revoked, not by express declaration of revocation, but by later inconsistent disposition of the residue in the last item of the latest codicil." This was not conceded by the appellants and the Circuit Judge did not mean to so state. No doubt he meant to use the language without the words, "also conceded that." He, nevertheless, meant to hold and did hold that the expressions in the last item of the latest codicil were utterly inconsistent with the declaration in item 10 of the will.

It is the judgment of this Court, that the judgment of the Circuit Court be, and the same is hereby, affirmed, and the action is remanded to the Circuit Court for any further proceedings.

MESSRS. JUSTICES GARY, JONES *and* WOODS *concur in the result.*