## BOWLY's Lessee vs LAMMOT.

APPEAL from *Baltimore* county court. *Ejectment.* for a tract of land called *Chatsworth,* lying in *Baltimore* county. Defence was taken on warrant, and plots were made. At the trial it was admitted by the parties that *William Lux,* deceased, was seized in fee simple, on the 1st of January 1773, of the tract of land called *Chatsworth,* granted to him by patent, containing 950 acres; and being so seized, made his will on the 5th of May 1773, whereby he devised, among other things as follows: "*Item.* I give and bequeath to my dear wife *Agnes Lux,* for and during her natural life, my tract of land and plantation called

W L. by his will, devised as follows: "I give and bequeath to my dear wife A L, for and during her natural life, my tract of land and plantation called C, (save and except the rope walk.)."
"Item, I give and bequeath to my dear son G L, his heirs and assigns, my tract of land called C; but in case my said son should die before he attains of legal age, and without issue, then I leave and bequeath the said tract of land

called *C,* to my dear wife A L, or her assigns, to be at her own will and disposal, as it originally was, *save and except five acres to be laid off,*" &c. "*and that said five acres, together with the rope walk, I give and bequeath to my dear nephew D B, his heirs and assigns* And it is further my intention, that if my dear wife should die before my dear son G, so that my estate be vested in him, and he should afterwards die before he attains legal age, and without lawful issue, then," &c — *Held,* that the devise of the *rope walk* to D B was an immediate, and not a contingent devise.

The intention of the testator is to be collected from the words of the will, and the whole of the will is to be considered and compared Such construction must be made as will gratify every part of the will, if it can be done consistent with the general intent.

The *rope-walk,* and the five acres, must be considered as the same,

*Chatsworth,* with the dwelling-house and all the buildings and improvements thereon, (*save and except the Rope Walk.*) "*Item.* I give and bequeath to my dear son *George Lux,* his heirs and assigns, my tract of land called *Chats-worth,* lying in *Baltimore* county, containing 950 acres; but *in case my said son should die before he attains of legal age, and without issue,* then I leave and bequeath the said tract of land called *Chatsworth* to my dear wife *Agnes Lux,* or her assigns, to be at her own will and disposal as it originally was, *save and except five acres, to be laid off in a long square on the south two degrees west one hundred and thirty-one perch line, being the fifth line from the beginning; and that said five acres, together with the Rope Walk, and all the buildings and improvements thereon, I give and bequeath to my dear nephew and partner, Daniel Bowly, his heirs and assigns;* and it is further my will and intention, that if my said dear wife should die before my dear son *George,* so that my estate be vested in him, and he should afterwards die before he attains legal age, and without lawful issue, then and in such case, I leave and bequeath all that part of my said tract of land called *Chatsworth,* that lies to the northward of a north west line drawn from the beginning trees of the tract of land called *Hap Hazard,* to *Agnes Walker,* and the heirs of her body lawfully begotten, and in default of such issue to *Charles Walker,* his heirs and assigns, for ever; and all the rest and residue of the said tract called *Chatsworth,* I give and bequeath to my said nephew *Daniel Bowly,* and his heirs and assigns, remainder over to my dear brother *Darby Lux,* his heirs and assigns, for ever, subjecting the same nevertheless in either case to the payment of £500 sterling to *Agnes Walker,* and her heirs." *William Lux* died on the 10th of May 1778, leaving *George Lux* his only son, and heir at law, then of the age of twenty-one years. *Agnes,* the wife of the testator, survived him several years. *Daniel Bowly* was the nephew of *William Lux,* and at the time of the date of the said will was in partnership with him in carrying on the manufactory of rope, in a *Rope-Walk* situated on a part of *Chatsworth,* but *Bowly* was not at that time in any manner interested in the land called *Chatsworth,* nor was there any lease of the *Rope-Walk,* or any articles or terms of partnership. *George Lux* lived many years after his arrival at the age of twenty-

one years; and after the death of his mother, and while he was in the actual seisin and possession of the land, did, on the 17th of April 1787, by deed, convey in trust, &c. to *William Russell*, "all that part of *Chatsworth* which hath not heretofore been granted and conveyed, and whereof the fee simple remained at and before that time in the said *Lux*, a part of which is now under lease to his under tenants," &c. *Russell*, after the execution of the said deed, entered upon and became seized of such part of *Chatsworth*, as could legally pass in virtue of the said deed, to and for the purposes of the deed; and afterwards by deed, dated the 27th of April 1789, conveyed to *Harry Dorsey Gough* parts of *Chatsworth*, described by courses and distances, and containing sixteen and a quarter acres. *Gough*, on the 9th of May 1801, conveyed to *Lammot*, (the defendant,) the parts of *Chatsworth* conveyed to *Gough* by *Russell*. The five acres of land, mentioned and described in the will of *William Lux*, are included within the lines of *Chatsworth*, and are part thereof; and they are truly located by the plaintiff on the plots in the cause, and are the same five acres of land which the plaintiff claims as his pretensions; but the *Rope-Walk* did not occupy or cover more than two or three acres of *Chatsworth*. The two parcels of land, mentioned and described in the deeds from *Lux* to *Russell*, and from *Russell* to *Gough*, and from *Gough* to the defendant, are parts of *Chatsworth*, and include the land for which this ejectment is brought, and are truly located on the plots, and for which the defendant hath taken defence. *Darby Lux*, named in the will, was the testator's eldest brother, and survived him, and is since dead, leaving issue at this time in full life and being. Upon these facts the defendant prayed the opinion of the court, and their direction to the jury, that the lessor of the plaintiff acquired no estate in the five acres of land in the said will mentioned, competent to support this suit. Of which opinion the court, (*Nicholson*, Ch. J. and *Hollingsworth*, A. J.) were, and did so direct the jury. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN, GANTT, and EARLE, J.

1810.

Bowly
vs
Lamret

*Martin*, *Ridgely* and *Winder*, for the Appellant, cited *Shep. T.* 84. 14 *Vin. Ab.* tit. *Grants*, 58, 62, 63. *Wyat*, *vs. Aland*, 1 *Salk.* 324. *Bac. Ab.* tit. *Wills*, (*F*) 522. *Smith vs. Packhurst*, 3 *Atk.* 136; and *Coke Litt.* 5, 56.

*Key* and *Purviance*, for the Appellee, cited *Chew's Lessee vs. Weems*, 2 *Harr. & Johns.* 173, (*note*): *Brogden vs. Walker's Ex'r. &c.* Ibid 285; *and Belt's Lessee vs. Belt, et al.* 4 *Harr. & M·Hen.* 80.

CHASE, Ch. J. delivered the opinion of the court. The following principles prevail in the construction of wills. The intention of the testator is to be collected from the words of the will, and the whole of the will is to be considered and compared together. Such construction must be made as will gratify every part of the will, if it can be done consistent with the general intent.

The question is, whether the testator intended an immediate devise of the *Rope-Walk* to his nephew *Daniel Bowly*, or intended it to be a contingent executory devise in *Bowly*, depending on the executory devise to *Ann Lux*, vesting in her, on the death of *George Lux* under age, and without issue?

The *Rope-Walk*, and the five acres, must be considered as the same. The five acres, as described in the will, is a particular and precise designation, by metes and bounds, of the land comprehended under the general terms, *The Rope-Walk*.

It is plain the testator did not intend to die intestate of any part of his estate, and particularly of his land called *Chatsworth*. It is also plain he intended the *Rope-Walk* for *Bowly*. If he intended a contingent devise to *Bowly*, there was no necessity for excepting the *Rope-Walk* in the devise to his wife for life, because *Bowly* was not to have it until *Chatsworth* vested absolutely in her on the death of *George Lux* under age, and without issue, and she might have enjoyed the whole of *Chatsworth* without interfering with such intention. But if he intended an immediate devise to *Bowly*, it was necessary to insert in the devise to his wife, for life, the exception of the *Rope-Walk*.

Is there any thing in this will to prevent it being expounded in such manner as will effectuate that intention?

The ninth clause is that part of the will on which the question principally depends. If in reading this clause

we stop at the words, "*but in case*," the consequence would be, that a fee simple would vest in *George Lux* absolutely. The testator did not intend to give a fee simple to his son, but to modify it in such manner as to create an executory devise to his wife, on the happening of two contingencies; and to effect that intention, it is necessary to read on and complete the sentence, which is not complete until you come to the saving clause which excepts the *Rope-Walk*. The whole clause is one entire sentence, comprehending two dispositions connected with each other, and one arising out of the other; and the intention of the testator, as to the two objects of his bounty, his son and wife, cannot be ascertained until the sentence is finished. The exception or restriction is as operative at the end of the sentence as it would have been at the commencement, and the saving pervades the whole disposition, and extends to the first as well as the latter part of the clause. The saving does not relate to the estate created, but to the thing devised.

This construction is enforced by an expression in a subsequent part of his will, where the testator uses the term his *estate*, (evidently meaning *Chatsworth*) vesting in his son upon the death of his wife; importing thereby it could not vest in him during her life; and if it did not, the devise to *Bowly* must have been intended by the testator an immediate, and not a contingent devise of the *Rope-Walk* to *Bowly*, otherwise it would have vested in his son during the life of the wife.

There is no complete disposition in the clause, until the creation of the estate limited to the wife by way of executory devise. The insertion of the saving manifests plainly what the devise is to operate on, by excepting a particular part, the *Rope-Walk*, which the generality of the words would have included, and if it had been the intention of the testator to apply the contingency to *Bowly*, it is natural to suppose that he would have repeated the words, making the estate contingent immediately after the devise to him, which of itself vests an absolute fee.

BUCHANAN, J, dissented.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED *(a.)*

(*a*) See the case of *Lammot's Heirs & Devisees vs. Bowly's Heirs*, on appeal from chancery, 6 *Harr. & Johns.* 500.