W. S. TAYLOE, Ex'r., &c , *v.* JAMES P. JOHNSON.

In construing a will, the chief object being to ascertain the *meaning* of the testator, words may be supplied or abstracted, grammatical arrangement, disregarded, and clauses transposed; *therefore,*

Where the context requires it, " *oldest*" may be read, " *youngest.*"

Where a testator in 1861, provided that " *Hellen*" should " receive $2,000 less than either of my other two children," out of an estate consisting of lands, slaves, &c., *Held,* that the amount at present, by which Hellen's share is to be diminished, is to bear such proportion to $2,000, as is borne by the present value of the estate (reduced by the results of the war) to such value in 1861.

Provisions, that upon the marriage of the testator's second daughter, her share should be taken out and allotted to her; and if either of the three youngest children, of whom the daughter was one, should die before *the time* appointed for the division of the estate, the survivors should inherit, her share,—did not operate to give such daughter's share to *the survivors,* upon her death after marriage, although, in fact, there had been no division of the estate.

Where a testator directed a division of his estate upon a certain contingency, and that a particular share thereof should thereupon be regarded as realty, *Held,* that such share was to be so considered from the happening of such contingency, even although there was no division.

BILL, by an executor, praying for advice, and the construction of a will, filed to Spring term 1868, of the Court of Equity for BERTIE, and at the same time transferred by consent to this Court.

The testator died in the early part of 1861, leaving four children, the eldest, Anne E., of full age, then and still the wife of Edward Watson; Hellen R Lee, then under age, who in 1863, intermarried with Jas. P. Johnson, and died leaving issue, which has since also died; William Joseph Lee, and Mary Jane Lee, who are still under age.

The value, at the death of the testator, of his personal estate, consisting of slaves, &c., was about three times as great as that of his real estate. The parts of the will necessary to an understanding of the opinion are as follows:

" 4th. I desire that my plantation called Green Pond shall

NOTE.—This case was decided at the last Term.

be kept up by my executors, retaining my slaves there, and to carry on and manage my farm just as if I were living, to hire out my surplus negroes, or to purchase other lands to work them on, to sell such refractory and disobedient negroes as they may deem most advantageous for my estate, and purchase others in their place if necessary, and to exercise their best judgment in its management until my youngest child becomes of age or marries.

"5th. I desire that when my daughter, Hellen R. Lee, arrives at the age of twenty-one years or marries, that her share shall be taken out of my estate, and for this purpose I desire my executors to select three prudent and discreet men to value my land, and her share of said value to be paid over to her, and the money so paid, I wish to invest in her as real estate, and descend accordingly, to her heirs, to be considered as so much land, and in the division and allotment to my said daughter Hellen, I desire that she receive two thousand dollars less than each of my other two children, William Joseph and Mary Lee; in other words, that my two last named children are to receive two thousand dollars each, more than Hellen, out of my estate.

"6th. I desire that when my eldest child becomes of age or marries, that the whole of my estate then be divided between my two youngest children, if the said Hellen has received her portion; but if at that time my daughter Hellen is unmarried, between her and my two youngest children, reference still being had, that she is to receive two thousand dollars less than each of the other two, and if either of my three youngest children should die before the time appointed for the division of my estate, then it is my desire that the survivor or survivors shall inherit that share or shares, and in no event is my daughter Ann E. Watson, to receive any portion of my estate."

The second daughter Hellen, after marriage and the birth of issue, died, without having her share of the estate valued and set apart her, according to the requirements of the 5th item of the will, she and her husband consenting to the executor's retaining possession and continuing the management thereof.

The bill states that the plaintiff is in doubt as to the proper construction of the will, the defendant claiming that the share of his deceased wife, if real estate, descends as an inheritance in fee to him, by the death of his child, or if personal estate, vests in him as administrator of his wife; while the plaintiff, as testamentary guardian of William and Mary Lee, claims that the share of the said Hellen, by virtue of the 6th item of the will, vested in her surviving brother and sister.

The defendant further claims that an account should be stated of the value of the testator's real and personal property at the time of his death, and its present value, and that the differences in the devises and legacies should be equitably modified by reason of the depreciation in value of the personal estate, by Emancipation of slaves and other causes; and that his share should not be as much as two thousand dollars less than that of William Lee and Mary Lee, each.

*Smith*, for the plaintiff.

*Peebles, contra.*

READE, J. In construing wills the paramount object is to ascertain the meaning of the testator. To accomplish this, words may be supplied or abstracted, grammatical arrangement disregarded, and clauses transposed. Sometimes this is necessary to be done to such an extent as to cause it to be carelessly said, that the Court makes the will. But, so far from this being true, there is nothing about which the Court is more careful than to ascertain and declare the exact meaning, and to give effect to the slightest wish of the testator.

The scope of the will in this case evidently is, that the bulk of the estate shall be kept together, and managed by the executors as the testator had managed it, until the youngest child shall arrive at age or marry, and then be divided among his three youngest children, Hellen, William and Mary, charging his estate however with such sum as would make William and Mary's shares $2,000 each, more than Hellen's. With the provision that, if Hellen should marry before the period fixed for

division, then, and in that event, her share should be taken out and set apart to her. Although this is the evident scope of the will, yet we are met with these perplexities:

1st. The fourth clause of the will, in express terms, makes the period of the division of the estate, *when* the *youngest* child arrives at age or marries, and the sixth clause, in terms equally express, fixes the period of the division, *when* the *oldest* child arrives at age or marries. We are however satisfied that " oldest " was written in the sixth clause by mistake for " youngest, " because the oldest child was of age and married at the time the will was written, and because the share of Hellen, the second child, is to be taken out when she arrives at age or marries, which shows that the estate was to be in bulk at that time, which, of necessity was subsequent to the marriage, or arrival at age of the oldest.

2nd. The testator's estate was a large one, and consisted of about one-fourth real, and three-fourths personal property; the greater portion of the personal property being slaves. The period for taking Helen's share out of the estate was when she married. She married in 1863. If her share had been taken out and allotted to her at that time, the charge upon the estate of $2000 each, in favor of the two youngest children, would have fallen upon the real and personal estate alike. Now however the slaves have been emancipated, and not much remains but the land. And the question is, does the $2000 each in favor of the two youngest children, attach as a charge upon the land and whatever of the personal property remains, so as to make Hellen bear an unequal portion of the loss by emancipation, or must the land and remaining portion of the personal property be charged with only so much now, as it would have been charged with if the allotment to Hellen had been made in 1863.

In this Court that is considered as done, which ought to have been done. In making the division now, therefore, the remaining estate is only to be charged with such portion of the $2000 each to the youngest children, as would have been charged upon the same property if the division had been made

in 1863. And so much of said sums as would have been a charge upon the slaves must be abated, and so much as would have been charged upon other personal property, which has been lost or depreciated, must be abated also. It will be necessary therefore to take an account of the estate as it was when the allotment to Hellen ought to have been made, in 1863, putting upon the property a substantial, and not an unreasonably inflated or depressed value, and also, an account of the value of the estate now. And so much of the $4000, to the two youngest children, must be charged upon the present value as will be equal to the whole amount charged upon the whole estate in 1863, so as to make the loss by emancipation and otherwise, fall upon the *estate*, and not upon Hellen alone. For illustration: if the estate was worth $20,000 in 1863 then the $4000 would have been a charge of one-fifth; or 20 *per cent.* of the present value would be charged upon it in favor of the two youngest; and then a division of the remainder into three equal parts, share and share alike.'

III. The sixth clause is as follows: "I desire that when my eldest child becomes of age or marries, the whole of my estate then be divided between my two youngest children, if the said Hellen has received her portion. But if at that time my daughter Hellen is unmarried, between her and my two youngest children, reference still being had that she is to receive $2000 less than each of the other two. And, if either of my three youngest children should die before the time appointed for the division of my estate, then it is my desire that the survivor or survivors shall inherit that share or shares."

We have already said that it is evident from the whole will that "eldest child" was written in this clause by mistake for youngest child, and that it must be so read. But a more serious difficulty exists in construing this clause; the provision in the latter part of the clause is, that, if either of the three youngest children should die before the youngest became of age, then, and in that event, the share of the child so dying should survive to the others.

Yet we cannot suppose that the testator meant that if Hellen

should marry and have a child, and then die, that her share should be taken away from her child, and given to her brother and sister. This would be not only unusual but unnatural.

We think that the testator was endeavoring to provide for two contingencies, first, if Hellen should marry, then her share must be taken out and allotted to her absolutely. Secondly, if she remained unmarried, and the estate remained in bulk, and either should die, then, the share of the child so dying should survive to the others. When, therefore, Hellen married in 1863, and her share was allotted to her, (as in this Court it is deemed to have been allotted) it lost the impress of survivorship, and became hers absolutely.

IV. The allotment to Hellen is to be considered as if made at the time of her marriage. And, it being directed in the will "to be considered as land, or invested in land," it makes it as if it were land, in view of this Court. And, at her death, it descended to her heir—her child—and, upon the death of the child, is vested in the father by virtue of our statutes: Rev. Code, ch. Descents.

There will will be a decree in conformity with this opinion.

PER CURIAM.                         Decree accordingly.