W. H. HOWERTON and others v. W. F. HENDERSON.

*Wills, ellipsis supplied.*

To carry out the general intention of the testator, the court supply an omitted word in the following clause of the will: "In case it should be more convenient to my beloved wife to have [sold] the land and even the negroes, the latter I suppose she ought to keep, as she will have two-thirds during widowhood and one-third in fee, she is at liberty to do so, as she will have ample money to purchase elsewhere."

(*Lassiter v. Wood,* 63 N. C., 360; *Macon v. Macon,* 75 N. C., 376; *Sessoms v. Sessoms,* 2 Dev. & Bat. Eq., 453; *Harrison v. Bowe,* 3 Jones Eq., 478; *Purnell v. Dudley,* 4 Jones Eq., 203; *Tayloe v. Johnson,* 63 N. C., 381; *Hill v. Toms,* 87 N. C., 492, cited and approved).

EJECTMENT tried at Fall Term, 1881, of GRANVILLE Superior Court, before *Gudger, J.*

Judgment in favor of plaintiffs, from which the defendant appealed.

*Messrs. Hinsdale & Devereux* and *A. M. Lewis,* for plaintiffs.
*Messrs. Merrimon & Fuller,* for defendant.

SMITH, C. J. The sole question involved in this controversy arises upon the construction of the devises in the will of James

Vaughn to his surviving wife, Ann, under whom the plaintiffs derive title and claim an estate in fee in the house and lot sought to be recovered in their action.

The will of the testator bears date early in January, 1816, and we suppose his death occurred soon thereafter, though the fact is not stated nor the time of proving the will given.

The first clause gives to his wife, during her widowhood, the "whole estate, real and personal," in manner and form to be thereafter stated, with some exceptions also to be mentioned; while the second devises and bequeathes to her one-third part of the entire estate, with carriage and horses and some minor articles of household furniture, "to her and to her heirs forever."

The testator then in several successive clauses gives certain named slaves to two nephews and nieces, to be delivered to them, and to another nephew and other nieces sums of money to be paid to them, at the death of his wife. To a sister he bequeathed an annuity, commencing at his own decease and to be paid to her quarterly in equal parts.

The testator then suggests, without giving positive directions, the expediency of making sale of certain real estate described as the "Eagle Tavern" lot and a tract of 132½ acres lying on Little Island creek, and enumerated articles of personal property, not including such as have already been disposed of, and excepting what he terms "tavern articles," or articles, as we understand, necessary to the business of a public house, and this he declares can only be carried out with the consent of Samuel Dickens, his partner, and nominated executor, to a dissolution of the partnership between them before the time fixed for its termination in the contract. In this confused clause, the testator in express terms recognizes the essential and predominant feature in the instrument, found in the two first clauses, by declaring that, if sold, one-third of the net proceeds of sale his "wife will be entitled to as soon as collected," and in case no sale is made, that she "will be entitled to one-third of the net rent."

The next clause, proceeding upon the supposition of a sale

under the preceding, enumerates as the property remaining to be divided, "my negroes, my Nut Bush land and the manor house and lot on which I live," and proceeds to direct the substitution of other slaves in place of those bequeathed to his first-mentioned nephew, if he fails to get those given him, or an equivalent in money to be paid instead.

Then follows the clause, which gives rise to the controversy, in these words:

"In case it should be more convenient to my beloved wife to have the Nut-bush land and my manor house and lot, and even the negroes, the latter I suppose she ought to keep, as she will have two-thirds during widowhood, and one-third in fee, she is at liberty to do so, as she will have ample money to purchase elsewhere."

The remaining dispositions and directions do not afford aid in putting a proper interpretation upon the recited clause, further than is furnished by the fact of the reiteration of the controlling intent that the wife will be entitled to a third part of the net interest and rents of my part of the estate, during life or widowhood, which we reproduce as an illustration of the confused language used, and the necessity of supplying omitted words to make the meaning intelligible and consistent.

There are but three admissible methods of interpreting the disputed article, and it is our duty to ascertain and carry out, as far as practicable, the intent of the testator as declared therein, in the light of the other provisions of the instrument.

1. The clause gives to the wife an election to take and hold the manor lot and other property in fee, in place of two-thirds of all for life and one-third in fee before given; or

2. The election of this in place of and as part of the one-third given in fee; or

3. An election to convert the described property, by sale, into money, and the transfer of her rights thereto in the plight in which they attached to the property sold.

The structure of the sentence itself, not less than other parts

of the will, forbids either the first or second modes of construction for reasons which we will briefly notice:

I. The first would greatly enlarge the value of the gift to the wife, everywhere else recognized, by adding all the slaves not specifically bequeathed in remainder, and, as would seem, a large part of the personal estate.

II. The clause itself, which equally bestows the lot and land and the slaves, immediately declares, not as a qualification, but as a precedent disposition still in force, that she "will have two-thirds during widowhood and one-third in fee."

III. The estate is not defined, and if the words "to have" are intended to give her possession and use, they are inoperative, since she has the right to possess and use both, without the words.

IV. The substitution of this, in place of the one-third in fee of all, is incompatible with the limitation of the wife's absolute interest to an undivided one-third part in all, and in excess of it.

We are constrained, therefore, to refuse to put a literal interpretation upon the clause, and, with some reluctance, to supply an evident ellipsis in the language employed, in order to give reasonable effect to the disposition and carry out the testator's general intent.

In a previous clause, a sale of certain property is contemplated, and in the next is mentioned that which remaining unsold will have to be divided, and in regard to both the original and converted property, the wife is to take the estate and proportion in the manner pointed out in the beginning of the will. It would produce an entire disruption of the plan of distribution, if under this clause the wife were to take, or *have,* in absolute right, the land described therein and all the slaves except the remainder in those specially bequeathed, a result at variance with a repeatedly declared purpose, that while enjoying nearly all for life, she should have absolute title and right to dispose of but one-third part.

Looking to the structure of the sentence, it is obvious that some word is omitted and to be supplied to give it meaning and force. The expression, "in case it should be more convenient to my

wife," implies some contrast in the condition of the land and slaves, some change of its status and identity which could only be brought about by a sale and the substitution of another fund in its place. Again, in reference to the slaves, the testator expresses the opinion that "she ought to keep" them, evidently indicating a power conferred to sell, but advising against its exercise; for if not sold, they would be kept, and the advice would be without meaning. But she is left "at liberty to do so"—do what had been already authorized—dispose of them.

The concluding expression is equally significant, "as she will have ample money to purchase elsewhere," indicating the source from which the ample money is to come, and plainly the loss of the real estate to be replaced by the purchase of land "*else-where.*"

The sentence will bespeak the testator's intent by adding the word "*sold*" after the word "have," and become intelligible and clear, and in harmony with the other provisions of the will.

There are obvious omissions in the instrument, and that we supply is but to give form to a clause that has already the substance, and thus maintain the integrity, of the dispositive instrument as a whole, and the consistency of its parts.

The most unsatisfactory of all judicial labor, perhaps, is found in the effort to arrive at the meaning of a testamentary paper, with but little light from adjudicated cases to aid, when they are so various in terms and often are prepared by persons careless in the use of language. This is full of perplexity, but keeping steadily in view the main rule of giving effect to the general intent, we must make doubtful individual clauses conform to that intent. *Lassiter* v. *Wood*, 63 N. C., 360 ; *Macon* v. *Macon*, 75 N. C., 376.

The numerous cases in the argument for defendant show that we are warranted by precedents in interpreting an omitted word, when demanded by the context, and indispensable to point the meaning of a clause. *Sessoms* v. *Sessoms*, 2 Dev. & Bat. Eq.

76

453; *Harrison* v. *Bowe,* 3 Jones' Eq., 478; *Purnell* v. *Dudley,* 4 Jones' Eq., 203; *Tayloe* v. *Johnson,* 63 N. C., 381; *Hill* v. *Toms,* 87 N. C., 492.

The finding by the court that the devisee, Ann, had made an election, is predicated upon a construction which allows her to take a fee simple in the lot, and as our interpretation that the election was to sell, and this has not been done, and the land was retained, the finding is a nullity, and does not affect the interests of the contending parties. For the error mentioned there must be a new trial, and it is so adjudged.    Let this be certified.

Error.                                                     *Venire de novo.*