[No. 5582.]
[No. 3260 C. A.]

## BACON ET AL. v. NICHOLS ET AL.

1. **Wills—Interpretation—Repugnant Clauses—**The rule that as between absolutely irreconcilable clauses the last shall prevail, is technical, and to be applied only where all other rules of interpretation fail to disclose the intention of the testator. The will is to be read as a whole, and when it is evident that the testator has failed to express himself as he intended or supposed he had done, and that the defect is one of omission, and it is certain beyond reasonable doubt what the words omitted were, they may be supplied by intendment, even though different opinions may be entertained, as to which of two or more words of nearly the same import were omitted.—(36)

2. **Wills—Interpretation — Evidence —** The testator and his wife six months before his death executed a deed to their son conveying real property having a clear rental value of six hundred dollars monthly, but reserving the possession and the rents and profits during the natural life of the two, and the life of the survivor. The wife had no interest in this property. The value of the estate disposed of, aside from this realty, was between $27,000.00 and $32,000.00. The will was written by the testator himself. He was not learned in the law. It directed the payment of specified legacies amounting to over $15,000.00, the payment of certain small annuities; and, after referring to the deed, the testator bequeathed to the son his watch and diamonds, and followed with a devise to his wife of "all my real estate * * * also all my personal property of every description * * * and she is to have the free use and restriction, possession, control and benefits of the same." No specific property was charged with the payment of the money legacies and annuities. Held, upon petition for the interpretation of the will:

(1) That the deed was admissible in evidence because referred to in the will, and because it afforded light upon the testator's idea as to what property he was disposing of.—(35)

(2) That, in the general devise to the wife of all his estate, it was evident the testator had no intention to annul the preceding bequests, that the words, "remainder, balance or residue," were inadvertently omitted and should be read into the will by intendment.—(47)

*Appeal from El Paso District Court*—Hon. LOUIS W. CUNNINGHAM, Judge.

Mr. J. C. HELM, and Mr. JOHN R. DIXON, for appellants.

Mr. GRANT HALDERMAN, Mr. L. P. McGUIRE, Mr. F. A. WILLIAMS, and Mr. GEORGE Q. RICHMOND, for appellees.

Mr. JUSTICE HILL delivered the opinion of the court:

John H. Bacon executed a will, which, in the disposition of his property, was as follows:

"First. I give and bequeath to Mrs. Eloise Powel Nichols, the only child of my sister Catherine M. Powell, the sum of five thousand dollars—$5,000.00.

"Second. I give and bequeath to Frank E. Hodgkin, the only child of my deceased sister Mary E. Hodgkins, the sum of five thousand dollars—$5,000.00.

"Third. I give and bequeath to Katie Bacon McKinney, the only child of my deceased brother, Frederick W. Bacon, the sum of five thousand dollars—$5,000.00.

"Fourth. I give and bequeath to Charles A. McKinney, husband of my niece Kate B. McKinney, my open faced gold watch and chain.

"Fifth. I give and bequeath to my sister Aurelia I. Magill, the sum of twenty-five dollars a month during her life.

"Sixth. I give and bequeath to Mrs. Augusta Bacon, widow of my deceased brother Frederick, the sum of twelve dollars and fifty cents a month during her life time.

"Seventh. I give and bequeath to Mary Weaver (daughter of S. P. Weaver), who was named after my wife, the sum of one hundred dollars.

"Eighth. I give and bequeath to Hobart F. Blythe, (son of B. F. Blythe, of Diller, Nebraska), the sum of one hundred dollars.

"Ninth. Having made a warrantee deed to my son William Henry Bacon, for lots seventeen (17), eighteen (18), nineteen (19) and twenty (20) in block eighty-one (81) situated in Colo. Springs, Colo. I also give and bequeath to my said son, my gold time watch and all my diamonds.

"Tenth. I give to my only and beloved wife, Mary A. Bacon, all my real estate of whatever kind I may have, also all my personal property of every description, all monies, notes, mortgages, bonds or stocks, and she is to have the free use, and restriction, possession, control and benefits of the same.

"Eleventh. Should my wife die before I do, then the said property will become the property of my son, William Henry Bacon."

The testator nominated his wife and son as the executors of the will.

Within a few months after the will was executed Mr. Bacon died; the will was duly admitted to probate. Thereafter, the wife and son filed a petition in the county court of El Paso county, for a construction of the will, whereby it was sought to have determined the rights of the respective legatees and devisees thereunder. To this proceeding the other beneficiaries were made parties. The county court held that it was not the intention of the deceased, by paragraph ten of his will, to revoke or set aside any of the bequests mentioned in the preceding paragraphs, and that by paragraph ten Mrs. Bacon was entitled to receive only that portion of the estate of the testator remaining after the payment of the bequests set out in the preceding paragraphs of his will. From this judgment the petitioners appealed to the district court, where a similar judgment was

(3)

entered; from which this appeal is taken and two questions are urged for determination.

"1st—Is there an irreconcilable repugnancy between paragraph ten of the will and the preceding paragraphs thereof, and if so what is the effect?

"Incidental to which is the question: Was said clause in said deed admissible for any purpose?

"2nd—Is the will void for uncertainty?"

In the construction of all wills the intention of the testator is the governing principle, the point to which all explanation should be directed. The circumstances of each individual case vary so much from those of most other cases that it is difficult to determine from the explanation or construction of one will what would control in the construction of another; and although there may be general principles tending to assist the courts in determining the intention of the testator, yet they can be but advisory and not controlling. Such rules are to be used as helps toward reaching the intention of the testator "making them our servants rather than our masters."—1 Redfield on Wills 420. For, as stated in the case of *Elyton Land Co. v. M'Elrath*, 53 Fed. 763:

"It is in many cases impossible to determine, beyond the possibility of a doubt, what the intention of the testator was; and all that can be done is to ascertain, from all the facts and circumstances surrounding him, his property, and those to whom it is left, and the language of the will, what probably was intended. * * * that has been the controlling principle."

The first question necessary to be determined is, was said clause in said deed admissible for any purpose? We answer in the affirmative in a case of this kind, where there is a contention over the disposition of property claimed, under different paragraphs of a will, which, when taken separately, create an ap-

parent irreconcilable repugnancy between them. The will refers to a deed (as explanatory in part and as a reason for the other dispositions made in the will) transferring certain property, and if necessary it might be read into the will as a part thereof. A will may be construed in connection with another instrument in writing to which it refers to aid in ascertaining the intention of the testator.—*Jackson v. Babcock,* 12 Johnson (N. Y.) 388; *Capp v. Brunner,* 132 Pa. St. 417; *Ford v. Ford,* 70 Wis. 19; *Hall et al. v. Hill, McLean & Co.,* 6 La. Annual 745.

We think it admissible for the further reason as throwing light upon the property which the testator may have thought he was disposing of, or attempting to dispose of, as held by this court in the case of *Nusly et al. v. Curtis et al.,* 36 Colo. 464.

"The question is one of intent, to be gathered from the language used in creating it, in the light of the circumstances of the testator and the property which he is disposing of in his will."

In this case it is shown that the value of the property disposed of was between twenty-seven and thirty-two thousand dollars, exclusive of any reference to the reservation contained in this deed, which was a deed executed by John H. Bacon and Mary A. Bacon, his wife, to their son, William H. Bacon, about six months prior to the death of the testator, for the property therein named of the conceded value of $100,000.00 with a rental value of at least $600.00 per month, over and above the cost of keeping the same in repair. The clause referred to in this deed reads as follows:

"The said grantors expressly reserve the possession, use and rents and profits of said described premises for and during the natural lives of the said grantors and for and during the natural life of the survivor (of either of them)."

While the deed was signed by both Mr. and Mrs. Bacon, it is stipulated that Mrs. Bacon had no interest in the property prior to the execution of the deed. The reservation in the deed was evidently in the mind of the testator at the time of the execution of his will and was properly admitted as having a bearing upon the question of the properties the testator may have understood he was disposing of under the provisions of his will, in which case in the construction of ambiguous or conflicting provisions the situation of the parties may be very properly taken into view.—Schouler on Wills, §§ 579-580; *Smith v. Bell,* 6 Pet. 68; *Nichols v. Boswell et al.,* 103 Mo. 151; *Day v. Wallace,* 144 Ill. 256; *Hunt v. White,* 24 Texas 643.

The principal contention is that, as there is no demonstrative or specific legacies mentioned other than in paragraphs four and nine (about which it is admitted there is no dispute) and as the other legacies are general, in that no specific property is charged with their payment and no particular fund is pointed out for their satisfaction, where a general legacy is followed by a general legacy or bequest of the testator for the same property, or part of it, that then an invincible or irreconcilable repugnancy arises, in which case it is claimed that the latter of two inconsistent provisions must prevail as evidence of the final intention of the testator.

This contention seems to have the support of the great weight of authority, but it is conceded the rule is technical, and by some authorities has been designated a harsh one, and is only adopted where all other rules fail in arriving at the intention of the testator, being upon the theory that the last provision can be considered as evidence of the final intent of the testator, but this rule has not been universally adopted. For instance, in the case of *Day v. Wal-*

*lace,* 144 Ill. 256, it was held that where a testator in the several parts of his will devised the same land to different persons in fee and there is nothing in the will to show that he intended the last named devisee to take to the exclusion of the first, the two devisees will take the land concurrently as tenants in common and in which case it was held that there was not such a clear and irreconcilable repugnancy between the two devises as to make the later one abrogate the prior one; and after conceding there was a conflict of authorities the court states:

"Taking into consideration all the facts of this case proper to be considered, it is manifest that whatever presumption might otherwise arise in favor of the latter clause expressing that intention, rather than the former, is rebutted."

In the case of *Field v. Eaton,* 16 N. C. 284, where a slave by name "Sal" was, by the testator, first given to his son and he again devises her in the same way to his daughter, it was held that the legatees took in moieties, specifically repudiating the rule that the latter clause should be taken as the latest intention of the testator. To the same effect is *McGuire v. Evans,* 40 N. C. 269. In *Jesson v. Wright,* (2 Bligh's R. 56), Lord Redesdale says:

"It cannot at this day be argued, that because the testator uses in one part of his will words having a clear meaning in law, and in another part other words inconsistent with the former, that the first words are to be canceled or overthrown."

But conceding the rule is as contended for by counsel for appellants (where there is an irreconcilable repugnancy between two clauses of a will the latter clause must prevail as being the latest expression of the testator's intention) is there such an irreconcilable repugnancy in this will, when considered as a whole, in the light of the circumstances of the

testator and the property which he is disposing of in his will, as should call for the adoption of this rule, when other well known rules are applied with a view of ascertaining the real intention of the testator?

In this case it is not a question of an irreconcilable repugnancy between two clauses of a will and therefore the latter must prevail, but the question here is whether the language used in paragraph ten is to be accepted in its literal sense so as to defeat the objects sought to be accomplished in the nine paragraphs preceding it, in fact, to defeat all intentions expressed in the remainder of the will, the only other paragraph containing any devise being the eleventh, contingent upon the death of the wife. In other words, by the language used in the tenth paragraph, when read in the light of the surrounding circumstances, was it the intention of the testator by this paragraph alone, to defeat the objects of all the preceding ones and thereby give to his wife all his property, both real and personal?

In the interpretation of wills, courts will look to the whole instrument, and construe each part with relation to the language used in other parts.—*Lane v. Vick*, 44 U. S. 464; *Moore v. Dudley*, 2 Stew. 170; *Foxall v. McKenney*, (Fed. case) 3 Cranch, C. C. 206; *Butler v. Huestis*, 68 Ill. 594; *Jackson v. Hoover*, 26 Ind. 511; *Grimes' Ex'rs v. Harmon*, 35 Ind. 198; *Kilgore v. Kilgore*, 127 Ind. 276; *Oxley v. Clay*, 7 Rob. 425; *Bowly's Lessee v. Lammot*, 3 Har. & J. 4; *Parker v. Wasley's Ex'r*, 9 Grat. 477.

And while if true that where there is an irreconcilable repugnancy between two clauses of the will, the latter clause must prevail as being the latest expression of the testator's intention, it is a rule of equal force that the testator's intention that the later clause should thus limit the earlier ones should clearly appear.—*Temple v. Samis*, 97 N. Y. 526.

The authorities which sustain this rule hold that it is applicable only where the two provisions are totally inconsistent and the real intention can not be ascertained.—*Covenhoven et al. v. Shuler et al.*, 2 Paige 122.

. In *Goddard v. Whitney*, 140 Mass., in passing upon a somewhat similar question, at page 98, it is stated:

"Where a testator, in the entire structure of his will, has revealed an intention, the language of individual clauses is always to be construed with reference to that intention, even if, in another instance or connection, it might properly receive a different construction."

In the case of *Claflin v. Ashton*, 128 Mass., concerning this question of inconsistent repugnancies, at page 443, the court states:

"The two articles, considered separately, are inconsistent and repugnant. They plainly refer to the same property, and, if construed literally and independently, each directs a disposition of it inconsistent with the other. But if the two are brought together and considered as parts of one scheme of disposition of the property, the result will be the same as if they both formed parts of one article of the will, and the repugnancy and difficulty of construction will not appear to be so great. The will may thus fairly be construed to read  *  *  *. Read in this form, the latter clause restricts and qualifies  *  *  *.

"We are of the opinion that this transposition and construction express and effectuate the intention of the testator.  *  *  *  It is to be presumed that the testator intended that all the clauses of his will should have some operation and effect. It is not to be supposed that the purpose of the ninth article was to entirely revoke and annul the devise to the heirs at law of his children in the fifth article. Such a

purpose, if entertained, would naturally have been expressed in direct language.''

In the case of *Mersman v. Mersman,* 136 Mo., page 257, involving the construction to be placed upon the words in one paragraph of a will, it is well stated:

''One rule of great force in solving the difficulties of interpretation is that all parts of an instrument should be read so that they shall stand rather than that any part should perish by construction. And to give effect to all parts, the general words of one part may sometimes require to be limited in their application.''

In *Updike v. Thompkins et al.,* 100 Ill. 406, in placing a proper construction upon a will it was stated, that ''particular expressions yield to the general purpose.''

In the case of *Price v. Cole's Ex'r et al.,* 83 Va. 343, it was held that the general intention of the testator gathered from the whole will, must prevail, over the rule, ''that of two repugnant clauses the last must prevail.''

That the language used in paragraph ten is in conflict with the disposition of the properties in the nine paragraphs preceding it, is apparent. When standing alone, it is unambiguous and needs no interpretation. When read in connection with the other portions of the will, was it the intention of the testator to give to it a literal construction, or was it intended that it should be limited in its application and in such case yield to the general purpose, or did he omit the insertion of words which would have clearly expressed his intent? Such words, when inserted, or this paragraph read as though they were inserted, harmonize the entire instrument and give full force and effect to every part thereof. This, it is conceded in all cases should be done if it can, and

if from the whole will we can say it is necessary in order to express the real intent of the testator, are we justified in supplying the words?

It is an established rule in the construction of wills that where it is evident the testator has not expressed himself as he intended and supposed he had done, and the defect is produced by the omission of some word or words, and where it is certain beyond reasonable doubt what particular words were thus omitted, they may be supplied by intendment and the will read and construed as if these words had been written in the place or places where they were intended. In such case, words and limitations may be transposed, supplied and rejected.—*Howerton v. Henderson*, 88 N. C. 597; Redfield on Wills, vol. I, p. 458; Williams on Executors, vol. II, p. 1162; *Colton v. Colton*, 127 U. S. 300; *Hellerman's Appeal*, 115 Pa. St. 420.

As stated by the supreme court of North Carolina in *Dew et al. v. Barnes, Adm'r, et al.*, 54 N. C., at page 151,

"No rule of law is better settled or more generally known, than that in the construction of a will, the intention of the testator, apparent in the will itself, must govern—and that in order to effectuate that intention, as collected from the context, words may, when necessary, be supplied, transposed or changed."

And as stated by Redfield on the Law of Wills, vol. I, p. 459:

"The fact, that different persons may entertain different opinions, in regard to which of two or more words, of nearly the same import, was omitted in the will, forms no objection to supplying the omission."

Redfield on the Law of Wills, vol. I, page 452, states further:

"And it was determined, at an early day, that

repugnant words in a will, in whatever portion of the instrument they appeared, and which contravened the evident general purpose and intention of the testator, in the other provisions of the will, might be rejected, or transposed."

In vol. II, Williams on Executors, page 1155, it is stated:

"The construction of the will is to be made upon the entire instrument, and not merely upon disjointed parts of it; and consequently all its parts are to be construed with reference to each other.   *   *   *

"Hence, general words in one part of a will may be restrained in cases where it can be collected from any other part of the will, that the testator did not mean to use them in their general sense."

A similar case to the one under consideration involving the application of both rules contended for here is that of *Nichols v. Boswell et al.,* 103 Mo. 151, wherein the irreconcilable repugnancy was in the second and third paragraphs of the will. The second gave to a granddaughter, Minerva Nichols, to a daughter, Mary, and also to another daughter, Amanda Hudson, "all of my real estate, together with all and every messuages, lands, tenements   *   *   *   to be divided equally between each of the above-named   *   *   *   so that each may receive one equal portion, to have and to hold, to them and their heirs forever."

The third paragraph states:

"Third. I further will that in case the above-named Minerva Nichols and Amanda Hudson, or either of them, should be dead and not now living, then all of my estate, both real and personal, I give and devise and bequeath to my daughter Mary,   *   *   *   to have and to hold, to her and her heirs forever."

The daughter Amanda Hudson was dead at the

time of the execution of the will and it was claimed
there, as it is here, that there was an irreconcilable
repugnancy between clauses two and three and that
upon account thereof the provisions of the latter
should prevail, which, by its plain language gave to
the daughter, Mary, all of the estate both real and
personal, it being a general disposition of the entire
estate. This contention was not accepted by the
court and in order to arrive at the real intention of
the testator the words "undisposed of" were sup-
plied and read into the third paragraph of the will,
in which opinion Macfarlane, J., states:

"The conclusion is, that the testator intended
that his daughter Mary should take, under the third
clause of the will, the estate previously devised, re-
spectively to plaintiff and his daughter Amanda,
only in case the devisee of such estate should be dead
at the time the will was executed, and not otherwise;
and that he never intended, if one of said devisees
should be dead, that his daughter Mary should take
the estate of both   *   *   *.

"If this was the evident intention of the testator,
as apparent from the whole will, then in order to
effectuate that intention, the words, 'undisposed of,'
may be supplied, so as to make the third clause of
the instrument read, 'then all my estate, both real
and personal, *undisposed of,* I give, devise and be-
queath to my daughter Mary.' This supplying of
words to effectuate the manifest intention is allow-
able under the well known rule, 'that in the construc-
tion of a will the intention of the testator, apparent
in the will itself, must govern, and that in order to
effectuate that intention, as collected from the con-
text, words may, when necessary, be supplied, trans-
posed or changed.'   *   *   *   'And it is no objection
to supplying the omission, that different persons may
differ in regard to which of two or more words, of

similar significance, will more appropriately supply the omissions.' * * *

"The proof, from the whole will and from the condition of the parties, their relation to each other, and the character of the property, is manifest and convincing, that these or similar words were inadvertently omitted from the will."

We think the reasoning in the foregoing case sound and applicable here, and that these same words, "undisposed of," "the remainder," "the residue," or similar words were inadvertently omitted from the will under consideration, and in order to convey the evident intention of the testator as apparent from the whole will, these or similar words may be supplied and read into it.

In the case of *Aulick v. Wallace, etc.*, 75 Ky. 531, the court supplied the words "or when she dies" so as to construe the instrument in harmony with the intent of the testator, in which opinion the court states, "in making this devise he evidently omitted the words 'when she dies,' which, when supplied, make the will read, * * *." In which opinion it is further stated:

"Eminent jurists differ in the application of these rules in the construction of wills, and cases will be found holding a doctrine opposed to the principle settled in this case; but, as said by Redfield in his able treatise on the law of wills, 'those who lay aside a too strict adherence to technicalities, while they assume more responsibility will, in the greater number of cases, effect the more perfect justice. It will more generally appear in the end that they were only acting upon the more perfect comprehension of an imperfectly developed principle which in the next age, perhaps, becomes so familiar as to excite no surprise.' "

In *Finlay v. King's Lessee*, 8 Curtis (U. S.) 444,

in commenting upon the construction to be given certain words in a will, inconsistent with its other provisions, the supreme court states:

"These words certainly import that the whole estate should vest in possession at the same time, and mark with precision when that time shall be. This express provision can be controlled only by a strong and manifest intent, to be collected from the whole will. But the intent of the testator is the cardinal rule in the construction of wills; and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail; although in giving effect to it some words should be rejected, or so restrained in their application, as materially to change the literal meaning of the particular sentence."

In the case of *Kane v. Astor's Executors*, 5 Sanford's Reports 533 (New York Superior Court), upon this same subject it was stated:

"It is undoubtedly true that, in construing a will, we are bound to give full effect to every part of it, and to single words as well as to sentences and paragraphs. But it is a paramount principle that the court shall carry out the general intent of the testator; and where a particular word or sentence is repugnant to the general intent and design of the whole will, or tends to render it incongruous or insensible, such word or sentence must give way, rather than sacrifice the whole scheme of disposition disclosed by the general tenor of the instrument."

In the case of *Roseboom v. Roseboom et al.*, 81 N. Y. 356, involving a somewhat similar contention wherein it is claimed at the death of the wife the testator bequeaths "all my property, both real and personal, to be equally divided between my eight children" and wherein the word "all" is relied upon as creating a repugnancy, to which the court states:

"If the testator had said, 'all my remaining property,' no one would doubt but that the devise under the first clause was absolute, and that it carved out of the estate one-third. That is, I think, its true construction.   *   *   *   The last clause of the sentence, that which directs division of the property, is made coherent and intelligible by applying it to such property as had not been before disposed of. So construed, there is no repugnancy.   *   *   *   So considered, the provisions of the will harmonize, and each has full effect. The residuary clause is not repugnant to the prior gift, and the devise may take effect according to its terms. We thus follow the rule which requires a will to be so construed as to avoid, if possible, all repugnancy, and give effect to all its language. We have here no occasion to depart from it; the two clauses are not irreconcilable, and there is no occasion, therefore, to reject one in order to uphold the other—a desperate remedy, and to be resorted to only in case of necessity."

In the case of *Davis et al. v. Boggs et al.,* 20 Ohio St. 550, the words "in trust only" were stricken or given no effect in the construction of the will; it being held in their ordinary technical sense that they were repugnant to the general scope and tenor of the will and for which reason were not given legal effect in its construction.

In the case of *Hellerman's Appeal,* 115 Pa. St. 120, the words "per annum" were inserted in the will; in which case the court held that a word may be supplied when there is a clear inference from the whole will that it was omitted by mistake.

In the case of *Kellogg v. Mix,* 37 Conn. 243, the court supplied the words "the net income of my estate."

In *Wheable v. Withers,* 16 Simons 504, the court supplied the words "under twenty-one years of age."

In *Doe, on the Demise of Sam. Cotton, v. Stenlake,* 12 East 514, the words "during their lives" were rejected, thus making a life estate an estate in fee simple.

In *Holmes v. Williams,* 1 Root (Conn.) 332, the court supplied the words "before he arrived at full age" in order to effectuate the evident intent of the testator.

In *Glover et al. v. Condell et al.,* 163 Ill. 566, the words "of the income" or "of the interest" or "of the dividends" were supplied to effectuate the intention of the testator.

Applying these principles to the case at bar, when this will is considered as a whole, with a view of ascertaining the intent of the testator, in the light of his circumstances and the property which he is disposing of in his will, we are led to conclude that he intended the words used in the tenth paragraph to apply to a limited sense, that is to *the remainder, the balance,* or *the residue,* the portion of his property not theretofore disposed of under the previous paragraphs in his will; that by mistake or inadvertence he omitted to supply the necessary words to state his intent correctly. There are many reasons which lead to this conclusion and overcome any presumption that he had changed his mind when he wrote the tenth paragraph and intended by it to cancel or annul the nine paragraphs preceding it.

Having reached this conclusion, we are justified, by reason and from the authorities, in reading into the will the necessary language in order to effectuate that intent. For instance, it is quite proper to assume that, having made certain specific bequests of certain amounts of money to specific persons and other articles to other persons, when he was writing the tenth paragraph he had in mind that the property covered by the previous bequests was then dis-

posed of, out of the way, and by the tenth paragraph
he intended to give his wife all the property which
he had not then disposed of in the preceding para-
graphs.   This seems to be borne out by the use of the
word "said" in the eleventh paragraph wherein he
states:   "Should my wife die before I do, then the
said property will become the property of my son
William Henry Bacon."   Had he changed his mind,
as contended, and intended to disinherit the other rel-
atives, and had he intended the word "all" in the
tenth paragraph to be accepted in its literal sense,
we think he would have used the same word in the
eleventh paragraph and stated in case of the death
of my wife before I die then I give *all* my property
both real and personal to my son.

Other reasons which could be legitimately in-
ferred are those stated by Judge Lacy in a similar
case, that of *Price v. Cole's Ex'r et al., supra,* where-
in he states:

"The first section of the will, standing alone,
gives the land therein mentioned to the nephew.   The
second section, standing alone, gives everything the
testator possessed to the sister.   Standing together,
they are conflicting and contradictory.   The will,
however, must be construed as a whole."

It was further stated:

"If the second was intended to dispose of every-
thing he possessed, and revoke the first, no hint is to
be found of any such intention to revoke, and the
specific devise is not again mentioned.   The very
use of the designation 'second' indicates that it is not
all, but that something has gone before; a second part
is a distinct recognition of the first part.   And ob-
viously the meaning of the testator is: *'Second,*
that is, after *first,* I give,' etc.; 'I have given in the
first place, and I now give in the second place.'

The will is upon the same piece of paper, and

written apparently upon the same day, and in this case it would be, as is observed by Chancellor Walworth, fanciful rather. than sound to undertake. to say that the testator had changed his mind since writing the first part of the will. The testator must be held to mean, as he doubtless did: 'Having regard to the first provision in my will, I now, secondly, provide,' etc. It is reasonable to suppose that if he had so suddenly and so radically changed his intention, that he would not have left the fact to an inference so vague and irrational.''

It is conceded that Mr. Bacon was not learned in the law and that he had evidently written the will himself. Outside of the construction which the law places upon conflicting provisions in an instrument, if accepted in its literal sense (which it must be conceded he intended as to all of it, if any), he intended thereby to take away not only the gold watch and chain bequeathed to the husband of his niece in the fourth paragraph, but also the gold watch and all his diamonds bequeathed to his son in the ninth paragraph of the will, and give them all to his wife under a principle that he had changed his mind. In commenting upon this principle the chancellor in *Covenhoven v. Shuler*, 2 Paige Ch. 122, states, '' a principle which I consider more fanciful than sound.''

In writing the tenth paragraph he may have had in mind the reservation in the original deed to his son, in which case there may have been a doubt in his mind as to the reservation therein passing the title to the possession, use, rents and profits of said property to his wife during her lifetime, after his decease, should she him survive, and in this manner without raising any suspicion concerning the doubt in his own mind, he would thereby, under the will, cover the question beyond any doubt so that in case the $600.00 per month rental was not lawfully re-

(4)

served to her under the deed executed to his son but became part of his estate during her natural life, it would, under this clause of the will, go to his wife and be covered, beyond any doubt.

As stated, while the deed shows it was executed by both Mr. and Mrs. Bacon to their son, it is stipulated in the record that Mrs. Bacon had no interest in the land mentioned in this deed prior to its execution; so far as the record shows Mr. Bacon himself was the absolute owner of it. The question as to the effect of the reservation in the deed upon the possession, use, rents and profits of the property, during the life of the wife, after his death, while not involved in this contention, might readily be raised in the mind of one not learned in the law, but Mr. Bacon by using this language in the will may have thought he would thus place the matter at rest in his own mind.

Again, in case he intended by the tenth paragraph of the will to revoke all the former bequests therein made, according to its language construed as contended for by counsel for appellants, thereby annulling everything preceding it, is it not more consistent that he would have stated in it that he so intended? We think so. As stated by the court in *Claflin v. Ashton, supra,* "such a purpose, if entertained, would naturally have been expressed in direct language." If he had intended when he wrote the tenth paragraph to annul everything preceding it would he not have simply torn the instrument up and drafted a new one? This would have consumed no more time, would have been much shorter than the paragraphs preceding the tenth and by a few short sentences like those in the tenth, eleventh and twelfth paragraphs of this will he could thereby have conveyed his entire intentions and relieved any questions concerning it. Any of these conclusions we

think are far more rational than the one that he intended to revoke all former bequests or intended the language used in its literal sense, unless he omitted to insert therein the words above indicated, or similar ones, which would clearly express his intentions. It is more reasonable to indulge in these presumptions than to suppose that he designedly made the tenth paragraph repugnant to the other provisions of the will so they could not be harmonized or all carried into effect.

This disposition of the principal question answers the other that the will should not be held void for uncertainty.

For the reasons stated the judgment of the district court should be affirmed and it is so ordered.

Decision *en banc*.                    *Affirmed.*

Mr. JUSTICE MUSSER not participating.

Mr. JUSTICE CAMPBELL and Mr. JUSTICE GABBERT dissenting.

———

Mr. JUSTICE GABBERT dissenting:

The court has made a will for the testator, instead of construing the one he did make. It is not our province to bend, twist or shape the text of a will, or add or eliminate words, until at last we may succeed in forcing it into the mold of our preconceived ideas of what the testator intended, but simply and solely to ascertain its true legal sense from the language employed, whatever that may be, by the application of the rules of law which must control in the exposition of a will. There is an irreconcilable conflict between the paragraphs involved. No specific property is charged with the payment of the bequests preceding the one to Mrs. Bacon. They are not to be paid out of any particular fund, and if paid, must be satisfied from the general estate of the testator. The bequest to Mrs. Bacon is also general, for

thereby the testator bequeaths to her *all* his real estate, and *all* his personal property of every description, and *all* his moneys, notes, bonds or stocks, possessed by him at the time of his death. The several general bequests cannot be satisfied because the one made to Mrs. Bacon cannot be carried into effect and those preceding paid, for the obvious reason that the latter would have to be satisfied out of the general estate of the testator, and Mrs. Bacon would only receive what was left. In other words, according to the provisions of the will, the testator has bequeathed the same property to different persons. Such a disposition, it is manifest, cannot be made or carried into effect.

Where an irreconcilable repugnancy exists between different clauses of a will, the posterior clause prevails.—30 Ency. 685; 2 Woerner, § 415; 1 Jarman on Wills, 473; 1 Redfield on Wills, p. 451; *Covert v. Sebern,* 73 Iowa 654 (568); *Rogers v. Highnote,* 126 Ga. 740 (744); *Martley v. Martley,* 108 N. W. 979; *Frank v. Frank,* 111 S. W. 1119 (1121); *Murfitt v. Jessop,* 94 Ill. 158 (163); *Foster v. Stevens,* 146 Mich. 131 (139); *Howard v. Howard,* 4 Bush (Ky.) 494 (497); *Armstrong v. Crapo,* 72 Iowa 604 (607); *Heodelbaugh v. Wagner,* 72 Iowa 601 (604); Schouler on Wills, p. 546, n. 1, subdiv. 7; Schouler on Wills, § 478; Underhill on Wills, § 357; *Covenhoven v. Shuler,* 2 Paige Ch. 122 (129).

Redfield, above cited, says that this rule is generally adopted by the American courts; and Jarman on Wills says that it is unsparingly applied, even when thereby the prior devises are defeated *in toto.* The generally accepted reason for the rule is, that in construing a will the intent of the testator at the moment of the execution of the will is to govern; hence, the posterior clause in case of repugnancy prevails, because it expresses his later testamentary in-

tention, and, therefore, furnishes the only safe guide by which to determine his intention.—Underhill on Wills, § 357; *Howard v. Howard, supra; Murfitt v. Jessop, supra; Foster v. Stevens, supra; Armstrong v. Crapo, supra.*

When conflicting and repugnant clauses of a will are plain and unambiguous, words cannot be supplied for the purpose of expressing the supposed intention of the testator; or, in other words, a court cannot make a will for a testator by supplying words supposed to have been omitted by him, in order to indicate an intention which the will itself does not express.—2 Woerner, § 414; *Pickering v. Langdon,* 22 Me. 413 (429); *Simpson v. Smith,* 33 Tenn. 394 (396); Underhill on Wills, § 361.

Neither, in such circumstances, is extrinsic evidence admissible to add to, or subtract from, its meaning.—*Arthur v. Arthur,* 10 Barb. (N. Y.) 1, (16); *Bulkeley v. Worthington, etc., Society,* 78 Conn. 526 (534); *St. Paul Sanitarium v. Freeman,* 111 S. W. 443 (444); 2 Woerner, § 421.

The court has either ignored or misapplied these rules. There is no ambiguity in any of the clauses involved. They are plain and unambiguous; but notwithstanding this fact, the court has assumed to supply words in paragraph ten, for the purpose of making it express his supposed intention, which, the court says, was to bequeath Mrs. Bacon all of his property after the preceding general bequests were satisfied. This is mere conjecture. He did not say so, nor can we gather from the language employed in the preceding paragraphs of the will or any part of it, that he intended to say so, in the face of the explicit expressions employed in paragraph ten. We may think it probable that such was his intention, but that is only conjecture, and contrary to the clear and unmistakable language of the will itself. The intention of

the testator expressed by the words he has employed
to express it must govern in the construction of his
will.—*Martindale v. Warner,* 15 Pa. St. 471 (480);
*Quincy v. Rogers,* 9 Cush. (Mass.) 291 (295). This
is the only safe rule. Unless this salutary rule is
followed, the result will be, as in the case at bar, that
courts will assume the prerogative of making a will
read so as to express what they imagine the testator
intended to say, or ought to have said. The duty of
courts is to execute a will as made, and not to make
one for the testator—*Elliott v. Topp,* 63 Miss. 132
(142); and in the interpretation of a will the true in-
quiry is, not what a testator meant to express, but
what do the words used express.—*Couch v. Eastman,*
29 W. Va. 784.

2 Woerner, at § 414, succinctly states the law
relative to ascertaining the meaning of wills clearly
applicable to the case at bar, by saying: "The ques-
tion in expounding a will is not what the testator
meant, but what is the meaning of his words." As
was well said in *Sherrod v. Sherrod,* 38 Ala. 537, at
p. 545: "Certainly, the court cannot resort to con-
jecture when the terms of the will are of intelligible
import. To do so would be to make a will conform-
ing to what it is supposed the testator intended, not
to search for the intention in the construction of what
is said."

We can well say, as was said in *St. Paul Sani-
tarium v. Freeman, supra:* "There was no am-
biguity in the language of the will, and in such case
it must be construed according to the legal import of
the language of the will, and the intention of the
testator must be drawn therefrom, not the will to be
drawn from the intention."

The observation of Lord Mansfield, quoted in
*Pickering v. Langdon, supra,* is certainly pertinent:
"A court of justice may construe a will, and from

what is expressed necessarily imply an intent not particularly specified in the words; but we cannot, from arbitrary conjecture, though founded on the highest degree of probability, add to a will or supply the omissions."

The will construed in *Gilmore v. Jenkins,* 129 Iowa 686, presents an excellent example of when words will not be supplied for the purpose of expressing the probable intent of a testator. By the fourth paragraph of the will (p. 688) the testator says: "To my five daughters (naming them) I give and bequeath the undivided one-fifth (of lands particularly described)."

The question arose as to whether he intended to devise to his daughters one-fifth each in the land described, or to all of them one-fifth of such land. Anyone glancing at the paragraph would unquestionably say that it was altogether probable he intended to give each a one-fifth, and yet the supreme court (at p. 691), in discussing the contention that for the purpose of expressing the intention of the testator there should be inserted in the fourth paragraph the word "each," or "all," or "several" or "joint," in order to make it intelligible, said: "We have gone as far as any court in permitting extrinsic evidence to aid in the construction of wills, but have never yet held that such evidence is admissible for the purpose of changing a will, or to aid in the making of a new one, one which the testator intended, but did not, in fact, make."

The deed cuts no figure. The testator refers to it merely for the purpose of explaining why he bequeathed to his son only his watch and diamonds, and hence, it does not aid, in the slightest degree, in curing the irreconcilable repugnancy of the paragraphs involved. Aside from this, except in case of ambiguity, the intent of the testator is to be gathered

from the will itself.—*Augustus v. Siebolt,* 66 Ky. 156 (159) ; *Gilmore v. Jenkins, supra.*

2 Woerner, at § 414, says, in substance, that as the statute requires wills to be in writing, it obviously precludes courts from ascribing to the testator any intention not contained in the written will; and, continuing, says:

"It follows that evidence which, in its nature and effect, is *simply explanatory* of what the testator has written may be admitted, while none is admissible which, in its nature and effect, is applicable to the purpose of showing *merely what he intended to have written.*"

In *Bulkeley v. Worthington, etc., Society, supra,* it was said: "If the expressions of the will are free from ambiguity, they unalterably disclose the intent of the testator, and no extrinsic disclosures of it is in such case permitted."

The main opinion purports to adopt the cardinal rule, that in construing a will the whole instrument is to be considered. That rule has not been followed, but the will has been changed by adding words, assumed, upon conjecture, to have been omitted, with the result that the will construed is one which the court has made for the testator.

Paragraph ten and those prior which are involved are irreconcilably in conflict. None of these paragraphs are ambiguous; on the contrary, they are as explicit and clear as it is possible for the English language to make them; and hence, words supposed to have been omitted cannot be supplied, nor can extrinsic evidence be resorted to for the purpose of reconciling the conflict, on the theory that the testator intended something he did not express.

From this conclusion it follows that the general bequests made by the paragraphs of the will preceding paragraph nine are nullities, and that the legatees

therein named take nothing thereby. The judgment of the district court should, therefore, be reversed and the cause remanded with directions to enter judgment in accordance with the views expressed in this opinion.

Mr. JUSTICE CAMPBELL concurs in this opinion.