12962

DesPORTES v. DesPORTES *ET AL.*

(154 S. E., 426)

408

*Messrs. James W. Hanahan* and *J. W. Ragsdale,* for appellant,

*Messrs. G. Duncan Bellinger* and *C. T. Graydon,* for H. W. DesPortes, Jr., and Mrs. Eleanor D. Peay, respondents,

August 14, 1930.

The opinion of the Court was delivered by Mr. Justice Blease.

This action was commenced in the Court of Common Pleas for Fairfield County by James R. DesPortes, individually, and as administrator with the will annexed of the estate of his mother, Mrs. Mattie LeC. Des-

Portes deceased, against H. W. DesPortes, Sr., H. W. Des-
Portes, Jr., John A. DesPortes, William S. DesPortes, Mrs.
Eleanor D. Peay, and Mrs. Sadie Bishop, as defendants. The
plaintiff and defendants are the only heirs at law, and are al-
so beneficiaries under the will of Mrs. Mattie LeC. DesPortes.
The purpose of the action was to have the Court construe
the will and codicils thereto of testatrix. Whatever doubt
existed as to the jurisdiction of a Court of equity to enter-
tain a bill of this nature seems to have removed by the
enactment of the Act of March 3, 1922 (32 Stat. 967), pro-
viding for declaratory judgments in certain causes.

The case came on for hearing at the September, 1928,
term of the Court, on the pleadings, an agreed statement of
facts, and certain testimony taken by a referee, and resulted
in a decree of his Honor, Judge T. J. Mauldin, filed Novem-
ber 12, 1929, from which the defendant John A. DesPortes
appeals to this Court upon numerous exceptions. (Let the
will and codicils be reported.)

The facts necessary for a better understanding of the
questions presented are these:

1. The will of testatrix, Mrs. Mattie LeC. DesPortes,
was executed November 10, 1927.

2. Dr. J. H. Miller, of Cross Hill, S. C., died on Decem-
ber 15, 1927, leaving an instrument of writing purporting
to be his last will and testament, which was caused to be
probated in common form in the Probate Court for Laurens
County on December 17, 1927, by his wife, Mrs. Ella I.
Miller, the named executrix thereof and sole devisee and
legatee thereunder.

3. On January 16, 1928, the said Mrs. Ella I. Miller died
intestate, leaving as her only heirs at law her two sisters
(one of whom was Mrs. Mattie LeC. DesPortes), and cer-
tain nieces and nephews, children of two predeceased sisters.
Mrs. Mattie LeC. DesPortes, as heir, was entitled to one-
fourth of the estate of Mrs. Miller.

4. On January 21, 1928, Mrs. Mattie LeC. DesPortes executed the second codicil to her will, by the terms of which she disposed of whatever money she might *inherit* from Mrs. Miller.

5. On March 31, 1928, Mrs. Mattie LeC. DesPortes executed the second codicil to her will, by the terms of which she disposed of "the money coming" to her "from the estate of Dr. J. H. Miller."

6. On the ......day of April, 1928, the supposed will of Dr. Miller was set aside in the Probate Court for Laurens County, and his estate distributed as intestate property. Since Dr. Miller had no children, one-half of his estate passed under the statute of distributions to his wife, Ella I. Miller.

7. On the 9th day of September, 1928, Mrs. Mattie LeC. DesPortes died, leaving the will and codicils above mentioned.

It is not necessary to consider the exceptions separately. The principal question presented is: Did his Honor err in holding that the written instrument of March 31, 1928, and designated by testatrix as "Codicil No. 2 to my will," was inoperative and of no effect, and that all the money coming into the hands of the administrator from the estate of Mrs. Ella I. Miller passed under the codicil of January 21, 1928? We think there was error in so holding.

There can be no question but that the instrument of March, 31, 1928, and designated by testatrix as "Codicil No. 2 to my will," is an instrument of a testamentary nature, and intended by testatrix to take effect after her death along with her will and first codicil.

"A will and codicil must be read together as one instrument, and so far as practicable must be reconciled or harmonized together as one consistent whole; although in cases of irreconcilable conflicts or repugnancies, the provisions of the codicil will prevail over and modify, change or revoke the provisions of the will, but only so far as it is necessary

to do so in order to give effect to the codicil." 40 Cyc., 1421. See also *Otis v. Brown,* 20 S. C., 586.

The office, effect, and rules for construing codicils are stated in *Logan v. Cassidy,* 71 S. C., 175, 50 S. E., 794, 802, as follows:

"The office of a codicil or codicils is designed, as said in volume 6 (2d Ed.) of American and English Encyclopedia of Law, p. 175, which is as follows: 'A codicil is a supplement or an addition to a will, made by the testator, to be taken as part of the testament, and having for its object the explanation, modification, addition to, subtraction from, or alteration of, some or all of the provisions contained in the will. A codicil may confirm, re-execute, revive, republish, or revoke any will with which it may be incorporated.' Page ·186 bb. A. & E. Ency. of Law, Vol. 6: 'Where, however, there are clauses in a codicil irreconcilable and inconsistent with clauses in the will, the provisions of the codicil, as the last indication of the testator's mind, must prevail, and, to the extent of the inconsistency revoke the clauses of the will.'

"The foregoing ·definition is in exact accord with what is said in the case of *Howser, as administrator, v. Flood.* The language in 1 Nott & McC., 322, is as follows: "The codicil, being but an expression of the testator as to disposing of his estate, shall take effect, though repugnant to some of the clauses of his will, and will be considered as a revocation of all such as are inconsistent with its provisions. Where a codicil is said to be a part of or incorporated into a will, this union must be understood to be the effect of its first acting upon the will by its own force as directing it to itself.' "

"The business of the codicil," says Powell on Devise, 24, "by intendment of law, was to alter, explain, add, or subtract something from the will." And again, on pages 541-546: "A codicil, likewise, if inconsistent with the preceding will, is, in law, a revocation of it; that is, so inconsistent that both cannot stand."

"The object of all constructions of a will and the codicils thereto is to ascertain what the intention of the testator is, as is well said in *Simons v. Brice,* 10 S. C., 368."

It seems that the will and both codicils now under consideration were prepared by testatrix herself.

While not skillfully drawn, yet these three instruments must be read together as one instrument constituting the last will and testament of testatrix, and her intention must be sought from the four corners thereof. That intention, when ascertained, must control, unless in conflict with some rule of law.

By the will of November 10, 1927, specific property only is disposed of. It contains no residuary clause.

A little more than two months after its execution, to-wit, on January 16, 1928, the sister of testatrix, Mrs. Ella I. Miller, died. The testatrix, no doubt, realizing that if she inherited any property from her sister it would not pass under her will, on January 21st executed the first codicil, by the terms of which she disposed of whatever property she might *inherit* from that source. The purpose of the first codicil, then, was to add something to the instrument of November 10, 1927, by disposing of property not disposed of by that instrument, to-wit, the property testatrix *might inherit* from Mrs. Miller.

Had the will of Dr. Miller not been set aside, his entire estate would have passed under that will to his wife, Mrs. Ella I. Miller. Since said will was set aside, and his estate distributed as intestate property, one-half of his estate passed to his wife under the statute of distributions, and became a part of her estate. One-fourth of the estate of Mrs. Miller, from whatever source derived, passed under the statute of distributions to testatrix. The purpose of the first codicil was to dispose of this property so *inherited* by testatrix from Mrs. Miller, and had the second codicil not been executed, it is clear that it would have passed under the first codicil. What effect, then, did the second codicil have on the first, if any?

It is true that testatrix was not an heir of Dr. Miller, and she inherited nothing from his estate. Nor does she undertake, by the second codicil, to dispose of any property by her *inherited* from Dr. Miller. By the first codicil she disposes of the property which she might *inherit* from Mrs. Miller. By the second codicil she disposes of the property *coming* to her from the estate of Dr. Miller.

Testatrix knew that there were two estates, that of Dr. Miller and that of Mrs. Miller, each individual estates. Testatrix was an heir of Mrs. Miller. Immediately after the death of Mrs. Miller, testatrix executed the first codicil to her will, by which she undertook to dispose of whatever property she might *inherit* from that estate. But thereafter she executed the second codicil by which she disposed of the property coming to her from the estate of Dr. Miller. It is but reasonable to suppose that she realized that Mrs. Miller's estate was augmented by property inherited from the estate of Dr. Miller, and that a portion of the property so inherited by Mrs. Miller would come to her. At any rate, she executed the second codicil for some purpose. That purpose must have been to dispose of that part of the property inherited from Mrs. Miller which came from the estate of Dr. Miller. If that was not the purpose, then its execution was wholly unnecessary, since the first codicil would have passed all the property *inherited* from Mrs. Miller, both that which the latter owned in her own right and that inherited from Dr. Miller.

It is our opinion, therefore, that the purpose of the second codicil was to modify the first codicil by excluding from its operation so much of the propety inherited by testatrix from Mrs. Miller as came from the estate of Dr. Miller. The effect, then, to be given to the two codicils is this: The first codicil passes so much of the property inherited by testatrix from Mrs. Miller as was the separate estate of the latter apart from the estate of Dr. Miller; the second codicil passes so much of the property inherited by testatrix from Mrs.

Miller as came from the estate of Dr. Miller. This construction gives effect and harmony to both codicils.

The second codicil makes certain specific bequests. ■ The residue, if any, to be invested in United States bonds and the interest paid to the husband of testatrix semi-annually for his support and pleasure. This provision we think, gave the husband a life estate in the property passing under the second codicil, after the payment of the specific bequests.

This codicil, however, contains this further provision: ■ "At my death the remainder is to be equally divided between my husband and children." By "remainder," it is clear that testatrix meant residue after the payment of the specific bequests. It is contended that this provision is conflicting with the prior provision for investing said residue in United States bonds and paying the interest to the husband of testatrix. The two provisions must be harmonized if possible. This can be done by giving the husband and children vested remainders in this residue burdened with a life estate in the husband in the whole.

It is next contended that the trial Judge committed error in holding that James R. DesPortes was not constituted executor by the will and codicils.

"It is not essential to the validity of a will that an ■ executor be appointed." 40 Cyc., 1079.

"It is not necessary to the designation of an executor ■ that the word 'executor' should be used, but any words which substantially confer upon a person, whether expressly or by implication, the rights, powers, and duties of an executor, amount to a due appointment under the will; and the person thus clothed with the essential functions of the office is said to be an executor under the will according to the tenor. So, one who is named 'trustee' may be thus substantially invested with powers as executor by the tenor, or even be executor, trustee, and testamentary guardian, although such offices should be kept distinct and letters issued

accordingly. The intention must, however, be sufficiently definite for that purpose, and the Court, in determining whether the will effectively appoints an executor, cannot proceed on loose conjectural interpretation, or by considering what a man might be imagined to do in the testator's circumstances." 23 C. J., 1021; *Nunn v. Owens,* 2 Strob. (33 S. C. L.), 101; *State v. Watson,* 2 Speers (29 S. C. L.), 97; *Watson v. Mayrant,* 1 Rich. Eq. (18 S. C. Eq.), 449.

From the foregoing authorities it will be seen that if there be any doubt as to whether the language of the will is sufficient to constitute one executor by the tenor, it is proper to apply for letters of administration with the will annexed. This was done; so it was unnecessary to decide whether or not the language of the will and codicils is such as to constitute him executor by the tenor. Though if it were necessary to so decide, we would hold that the language of these instruments is sufficient to constitute him executor by the tenor.

It is the judgment of this Court that the judgment of the Circuit Court be modified in accordance with the views herein expressed.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE MENDEL L. SMITH concur.